**I–T–E CIRCUIT BREAKER COMPANY, a corporation, Appellant,**

v.

**Lawrence HOLZMAN, as trustee in bankruptcy of the estate of Instrumentation & Control Engineering, Inc., a California corporation, Appellee.**

No. 19988.

United States Court of Appeals Ninth Circuit.

Dec. 23, 1965.

Gerald Bridges, of Bridges & Bridges, Los Angeles, Cal., for appellant.

Frank B. Orfield, of Orfield, Thompson, Bunker & Sullivan, San Diego, Cal., for appellee.

Before CHAMBERS, BARNES and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal in a diversity case action in bankruptcy wherein the plaintiff Lawrence Holzman, as trustee in bankruptcy of Instrumentation & Control Engineering, Inc., a California corporation, brought suit to recover money paid to I–T–E Circuit Breaker Company, a creditor of the bankrupt, alleging a voidable preference under section 60, sub. b of the Bankruptcy Act, 11 U.S.C. § 96, sub. b.

The district court had jurisdiction based on diversity of citizenship (28 U.S.C. § 1332), and pursuant to section 60, sub. b of the Bankruptcy Act (11 U.S.C. § 96, sub. b). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

The issues involved in this appeal from a judgment in favor of the trustee require a statement of the history of the bankrupt. The bankrupt, Instrumentation & Control Engineering Company (hereinafter referred to as "ICE") existed originally as a division of Miles-Samuelson West, Inc., a Delaware corporation. Miles-Samuelson West, Inc. sold ICE to John W. McConnell, an employee of ICE, and on October 1, 1961, McConnell began operating ICE as a sole proprietorship, under the same name as theretofore. On December 20, 1961, McConnell filed articles of incorporation with the California Secretary of State, and did nothing more. Thereafter McConnell used the corporate name. The California Commissioner of Corporations issued a negotiating permit to ICE in June 1962, but no stock was ever issued by the corporation. There is no dispute

that the entity which eventually went into bankruptcy was the ICE *corporation*.

Appellant began making sales of goods to ICE in October 1961. Appellant contends that it did not know the exact nature of the ICE business organization when these sales began, but received a Dun & Bradstreet report on ICE in late December 1961 showing ICE to be a corporation.

By the end of November 1961, ICE owed appellant nearly $12,000, most of which was paid by the end of December 1961. Thereafter appellant shipped goods on open account until, by the end of February 1962, ICE owed appellant $33,740.55. Between January and March 1962, appellant sought collection on this open account and also sought a financial statement from ICE, but without success on either request. In early March 1962, appellant withheld shipment of orders to ICE until some payment was received. As a result of this refusal to ship, McConnell telephoned William Upson, the credit manager of appellant in Philadelphia, to negotiate further shipments. As a result of this conversation the parties agreed on an immediate cash payment of $5,000, and that a draft would be executed for the balance, $28,711.03, to be secured by an assignment of accounts receivable from Allis-Chalmers. Upson prepared the documents on March 16, 1962, in which he characterized ICE as "A California Corporation" and sent them to McConnell.

Subsequent to the assignment of ICE's accounts receivable, but before payment of the draft, appellant received a Dun & Bradstreet report dated March 6, 1962, stating that ICE intended to assign accounts receivable to a factoring concern in California. Upson was concerned about ICE's use of accounts receivable financing and about the risk of double assignment, and so telephoned McConnell on April 6, 1962. At about this same time, McConnell was told by Upson that sales to ICE would thereafter be on a cash basis. On April 15, 1962, ICE paid in advance for goods subsequently shipped. On April 18, 1962, Upson wrote to McConnell stating that he had learned that ICE had made a second assignment of the Allis-Chalmers accounts to the factoring concern, and confirmed an earlier oral agreement that no further accounts receivable would be factored until the draft in favor of appellant had been paid. The draft was sent for collection on April 27, 1962, and was paid to appellant's bank in Philadelphia on May 1, 1962.

During May and June 1962, several small shipments were made to ICE by appellant, part of which had been paid for in advance in April 1962. A dispute exists as to the amount of shipments on open account after payment of the May 1, 1962 draft.

On June 9, 1962, ICE made an assignment for the benefit of creditors. On July 25, 1962, ICE filed a voluntary petition in bankruptcy. Appellant made a claim in the bankruptcy proceedings for $4,693.70, the balance due on the ICE account held by appellant.

On June 13, 1963, trustee Holzman began the proceedings below alleging that the payment of $28,711.03 on the draft on April 27, 1962 constituted a voidable preference under section 60, sub. b of the Bankruptcy Act because made within four months of bankruptcy, at a time when appellant knew or had reason to know that ICE was insolvent, and satisfied the other requirements of section 60, sub. a. Appellant, defendant below, defended on two grounds: (1) that defendant I-T-E had no knowledge or reason to know that ICE was insolvent when it accepted the payment alleged to be preferential; (2) that in any event the payment by ICE was from the personal bank account of McConnell and was not made from funds belonging to the bankrupt. The trial judge found against defendant I-T-E on both of these defenses and awarded judgment, with interest and costs, in favor of the trustee, with a set-off of $270.70 for credit extended to

ICE which had enriched the ICE estate after the preferential payment. This appeal followed, in which I–T–E urges the same two defenses as it unsuccessfully urged below, and an additional allegation that the district court erred in allowing a set-off of only $270.70.

### I—IS THE COURT'S FINDING CORRECT THERE WAS REASONABLE CAUSE TO BELIEVE INSOLVENCY PRESENT?

The pertinent provision of section 60, sub b. states:

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, *reasonable cause to believe that the debtor is insolvent.* * * *" (Emphasis added.)

Collier on Bankruptcy and the cases cited therein make at least two things clear about the test of section 60, sub. b: (1) that mere suspicion or apprehension that the debtor may be insolvent is not adequate to satisfy 60, sub. b; and (2) that actual knowledge of insolvency is not necessary, but only reasonable cause to believe that the debtor was insolvent is required. The test of when a creditor has such reasonable cause has often been said to be when such a state of facts is brought to the creditor's notice, respecting the affairs and pecuniary condition of the debtor, as would lead a prudent business person to the conclusion that the debtor is insolvent. (3 Collier § 60.53 and cases cited therein.) A creditor may not close his eyes in order to remain ignorant of the debtor's true condition; and the creditor is chargeable with notice of all facts which a reasonably diligent inquiry would have disclosed. (3 Collier § 60.53 and cases cited.)

In the light of these established rules for the interpretation of section 60, sub. b, we cannot say that the district court was clearly erroneous in finding that appellant had "reasonable cause to believe" in this case. The district court based its finding on the facts that (1) though appellant repeatedly requested financial statements from ICE (which statements would have revealed insolvency), none was ever submitted; (2) on or before April 6, 1962, appellant knew that ICE was factoring its accounts; (3) appellant knew that ICE was consistently delinquent in meeting its bills from appellant. The court further found that there was also evidence that appellant believed ICE was insolvent. This further supports the finding of "reasonable cause to believe." [1]

Virtually none of this evidence relied upon by the district court is disputed. Rather, appellant merely asserts that such evidence is not adequate to establish that appellant had reasonable cause to believe that ICE was insolvent. We disagree. In light of the evidence and the established rules of interpretation surrounding section 60, sub. b, the finding of the district court on this issue is not clearly erroneous.

### II—WAS THERE ERROR IN AMOUNT OF SET-OFF ALLOWED?

After the preferential payment in satisfaction of the antecedent debt, additional shipments were made to ICE in March–June 1962. Part of these shipments were paid for in advance by a payment of $1,804.14 in April 1962. Appellant alleges that shipments from May

---

1. This evidence included (1) after extending credit to the extent of $33,000, ICE was "put on practically a cash basis;" (2) after the allegedly preferential payment in a substantial sum, credit to ICE was only extended to the extent of $270.70 over a period of several months; (3) the testimony of Dye and Upson, employees of appellant, indicated that they were "extremely concerned about the affairs of I. C. E. as early as March of 1962."

3–June 7, 1962, totaling $1,145.52 were not paid for and should have been set off pursuant to section 60, sub. c of the Bankruptcy Act. The district court found that only $270.70 qualified for set-off. Appellee's brief (p. 20) explains this disparity by stating that "the legend at the bottom of the last page of the Exhibit indicates that the invoices Marked (c) were paid in advance on April 18, 1962 by the payment of Check No. 0716 in the amount of $1,804.14 * * *." Appellee states that Plaintiff's Exhibit No. 13 indicates that purchases in the amount of $874.82 were so indicated as having been pre-paid by the April 1962 check, leaving unpaid only $270.70 worth of shipments qualifying for set-off, which the district court allowed.

We have examined Plaintiff's Exhibit No. 13 and find that appellee's interpretation of that exhibit supports the action of the district court.[2] We find no error in the allowance of a set-off of only $270.70.

### III—WERE THE FUNDS PAID THOSE OF THE BANKRUPT?

Appellant contends that the appellee has failed to carry his burden of establishing that the preferential payment to appellant came from funds belonging to ICE. Appellant asserts that the funds from which the $28,711.03 payment to I–T–E was made came from payment of the account receivable from Allis-Chalmers which was incurred when McConnell operated as a sole proprietorship and before incorporation and that the actual payment by check to I–T–E was made from an account in the Bank of America which stood in the name of John McConnell as a sole proprietor and that since it is ICE, *Incorporated,* and not McConnell personally or as a sole proprietor which is the bankrupt, appellee has failed

to establish a transfer of money or property of the debtor.

The district court's only finding on this issue is the following, from his Memorandum of Decision of December 7, 1964:

"2. There is no evidence to support defendant's contention that the preferential payments were made by other than the bankrupt concern." (Tr. 18)

It is not disputed that the account receivable from Allis-Chalmers which ICE, Incorporated, purportedly assigned to I–T–E as security for payment of the ICE draft was paid by Allis-Chalmers to ICE rather than directly to I–T–E, and that the payment by check to I–T–E was by a check *drawn by McConnell* on the account at the Bank of America standing in his name alone.

■ Appellant is correct in its assertion that section 60, sub. a requires the transfer of the property *of the debtor* in order to create a voidable preference under section 60, subs. a, b. We also agree with appellant that this is one of the elements of a preference which the trustee has the burden of proof of establishing in order to show that a preference has taken place. The question is whether appellant is correct in asserting that appellee has failed to carry that burden in light of the defense interposed by appellant that the funds used were not those of the bankrupt.

■ Appellee attempts to meet this allegation of error by showing that ICE held itself out to be a corporation and that appellant dealt with ICE as a corporation and that, "even in the light most favorable to the appellant, the method of payment was merely a conduit for the transmission of corporate funds." (Ap-

---

**2.** Plaintiff's Exhibit 13 (third page, but described therein as p. 2) was a list of orders delivered to and payments made by the bankrupt. This contains certain entries marked with a "(c)" with the notation at the foot of the page: "These invoices were paid 4/18/62 in advance in check No. 0716." These items, after June 3, 1962, marked with a (c) total $874.82.

pellee's Brief, p. 19.) Appellee cites no evidence in the record, and our own review has revealed none, to refute that offered by appellant that the accounts receivable and bank account were never sold or assigned by McConnell personally to the corporation. As pointed out above, appellee has the burden of proving that the property belonged to the bankrupt corporation. His assertions that the corporation and McConnell were merely "alter egos" or "conduits" for one another do not satisfy this burden of showing that the property transferred had become that of the corporation, or that McConnell's conduct has estopped him to deny that the property was that of the corporation.

The district court did not make his finding after weighing all the evidence. He found "that there was no evidence to support appellant's position." This is clearly erroneous. The testimony of Mr. Bratton, however indecisive or unbelievable it may have been, was *some* evidence. More importantly, the finding seems to disregard the allocation of burden of proof. It was incumbent upon appellee to show that the property transferred was that of the bankrupt corporation, rather than for appellant to show otherwise.

Appellant cites an allegedly similar case where the failure to distinguish between the corporate and personal entity led to reversal on appeal. In Re Le Maire Cosmetic Co., 174 F.2d 749 (7th Cir. 1949). While the basic problem is the same, the facts are not identical with those here present.

We hold that the district court erred in not requiring plaintiff-appellee to prove that the account in the name of the individual McConnell was property of the bankrupt corporation. We remand in order that the court may reconsider the matter, including the hearing of further testimony if he thinks it appropriate, and for the making of further findings.

Remanded.