**In re DESIGN 3 LTD., INC., Debtor.**

**James B. McCRACKEN, Trustee Plaintiff.**

v.

**SALEM CARPET MILLS, INC., d/b/a Majestic Carpet Mills, Defendant.**

**Bankruptcy No. 80–00019–BKC–JAG.**
**Adv. No. 81–0513–BKC–JAG–A.**

United States Bankruptcy Court, S. D. Florida.

Jan. 28, 1982.

Chad P. Pugatch, Cooper, Shahady, Frazier & Pugatch, Fort Lauderdale, Fla., for trustee-plaintiff.

A. Rodger Traynor, Jr., Fowler, White, Burnett, Hurley, Banick & Strickroot, P. A., Miami, Fla., for defendant.

James B. McCracken, Fort Lauderdale, Fla., trustee.

JOSEPH A. GASSEN, Bankruptcy Judge.

## FINDINGS AND CONCLUSIONS

In this adversary proceeding, the trustee seeks to recover on behalf of the debtor-estate an alleged preference created through the payment by one of the major stockholders and principal operators of the debtor to one of its suppliers, Salem Carpet Mills, Inc., the defendant in this adversary proceeding. The trustee further alleges that the stockholder and principal, Myrna Schweiger, together with her husband, Stanley Schweiger, owed money to the debtor and made the $3,000 payment complained of in this case to the defendant as a result of an agreement between the Schweigers and the debtor. (See amended complaint to recover preference, C.P. No. 6.)

The defendant's position is that the Schweigers had become guarantors of the debtor's obligation to the defendant and that the $3,000 payment was made by reason of the guaranty. Defendant further contends that the Schweigers were not, in fact, indebted to the debtor at the time the payment was made, and that there was no agreement between the Schweigers and the debtor that the Schweigers should pay money which they owed to the debtor to the defendant instead.

The parties agree that if the trustee's allegations are established then the payment made by the Schweigers to the defendant would constitute a preference under 11 U.S.C. § 547(b) and therefore, recoverable by the trustee from the defendant.

The matter was tried before the court on December 7, 1981. The plaintiff's evidence consisted of a copy of the statement of the defendant to the debtor, dated May 10, 1980 (Plaintiff's Exhibit No. 1),

copy of a letter from the defendant to the debtor, dated December 5, 1979 (Plaintiff's Exhibit No. 2), and the deposition of Stanley Schweiger, taken December 3, 1981 with exhibits identified at that deposition (Plaintiff's Exhibit No. 3) admitted into evidence without objection except as to the matters which the defendant objected to regarding certain questions and lines of questioning in the deposition. The defendant's evidence consisted of testimony from one Doris Ritter, former regional credit manager of the defendant, and a copy of an unsigned guaranty form used by the defendant (Defendant's Exhibit A).

The court finds from the evidence that there was no written guaranty from the Schweigers to the defendant. The giving of such a guaranty was undoubtedly discussed at the meeting between the Schweigers and Doris Ritter on December 5, 1979 but was not executed that day (Plaintiff's Exhibit No. 2). Ms. Ritter testified that thereafter a written guaranty signed by the Schweigers was received. However, no copy of an executed guaranty could be found and therefore, none was offered into evidence. Mr. Schweiger, on the other hand, stated that he had not signed any guaranty and that to the best of his knowledge his wife had not either.

The issue of whether or not the Schweigers owed the debtor money at the time they paid $3,000 to the defendant in December, 1979 is not as easily resolved. The Schweigers had been advancing substantial sums of money to the debtor-corporation over a long span of time. At least a year prior to December, 1979 and the subsequent bankruptcy proceeding early in 1980, the Schweigers had advanced some $15,000 to the corporation which Mr. Schweiger still considered a debt due and owing to the Schweigers from the debtor-corporation. Some of the money advanced by the Schweigers was on account of furniture to be purchased by the debtor-corporation and used by the Schweigers for their personal use. However, none of that furniture had been delivered to the Schweigers within a year of their having made the advances. Thereafter, when the furniture was ready for delivery, the Schweigers were fearful

that the taking of the furniture would be considered an insider preference to them in view of the debtor's precarious financial position and contemplated bankruptcy. Therefore, the Schweigers paid again for delivery of furniture, notwithstanding that they felt they had already paid for that furniture.

In addition, the Schweigers had charged some personal items to the debtor on an American Express charge account. The Schweigers and the trustee settled the dispute over those charges upon Myrna Schweiger's promise to pay the trustee $1,300, and the precise amount of the personal charges made was not litigated in this adversary case. Apparently, those charges were approximately $3,000. The only evidence on the status of accounts between the debtor-corporation and the Schweigers is the deposition testimony of Stanley Schweiger (Plaintiff's Exhibit No. 3). His testimony clearly shows that at all times involved in this case, the debtor-corporation owed the Schweigers substantially more than it could ever claim from the Schweigers by way of a setoff. Therefore, the court concludes that the debtor owed money to the Schweigers and that the Schweigers did not owe any money to the debtor in December, 1979 when the Schweigers paid $3,000 to the defendant.

The plaintiff seeks to have the court infer that the $3,000 payment by the Schweigers to the defendant was by agreement with the debtor. That inference is supposed to result from the fact that the Schweigers were insiders of the debtor, that Mrs. Schweiger owned fifty percent interest in the debtor and was in complete control of its operation at the time the $3,000 payment was made. It further involves concluding that the Schweigers recognized that their valid debt to the corporation exceeded the corporation's valid debt to them. The court feels that no such inference can justifiably be made. The Schweigers in December, 1979 were attempting to save and reestablish the business of the debtor. That is the reason that they paid the $3,000 to the defendant in December, 1979. Shortly thereafter, the Schweigers apparently recognized the hopelessness of the debtor's

business future and opted for relief under chapter 7 of Title 11 U.S.C.

The burden is on the party asserting a preferential transfer to prove that the transfer did deplete the debtor-estate. *DeAngio v. DeAngio*, 554 F.2d 863 (8th Cir. 1977). The trustee has not carried that burden on his allegation that the Schweigers or either of them owed money to the debtor and therefore has not shown that payment to the defendant was a transfer of funds belonging to the debtor. We would be hard put to infer an agreement between Schweiger and the debtor that Schweiger should pay $3,000 to the defendant rather than to the debtor under the facts as herein found.

Counsel for the trustee is to be commended for his alertness in spotting this potential recovery and his aggressiveness in pursuing it. However, under the facts as found, we conclude that there has been no voidable preference within the meaning of 11 U.S.C. § 547(b) as asserted by the trustee.

In accordance with Bankruptcy Rule 921(a), a separate Final Judgment in favor of the defendant and incorporating these Findings is being entered this date.