**In re VASU FABRICS, INC., Debtor.**

**NEW YORK CREDIT ADJUSTMENT BUREAU, INC., Trustee, Plaintiff,**

v.

**JUST IN–MATERIALS DESIGNS, LTD., Defendant.**

**Bankruptcy No. 82 B 12071 (PBA).**
**Adv. No. 83–5813A.**

United States Bankruptcy Court,
S.D. New York.

April 27, 1984.

Patterson, Belknap, Webb & Tyler, New York City, for trustee; David W. Dykhouse, Rees W. Morrison, New York City, of counsel.

Lauritano & Schlacter, New York City, for defendant Just In-Materials Designs, Ltd.; Jed R. Schlacter, New York City, of counsel.

### MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

PRUDENCE B. ABRAM, Bankruptcy Judge:

On October 26, 1982 an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against the debtor, Vasu Fabrics, Inc. ("Vasu" or the "Debtor"). An order for relief was entered on November 23, 1982. The Trustee, New York Credit Adjustment Bureau, Inc. ("Trustee"), was appointed on February 2, 1983. On July 21, 1983, the Trustee commenced this adversary proceeding against Just In-Materials Designs, Ltd. ("Just In") seeking to recover $9,000 as a preferential payment under Section 547 of the Bankruptcy Code, 11 U.S.C. § 547. On December 14, 1983, the Trustee moved for summary judgment. The defendant, Just In,

has opposed the motion. Oral argument was heard on January 9, 1984. Following argument, additional submissions were made in response to certain questions raised by the court during the argument.

The motion for summary judgment must be denied as the Trustee has failed to establish that there are no material undisputed facts. However, because of the importance to the future course of this litigation, the court has determined that it should proceed to consider and resolve the various legal issues presented to it on the summary judgment motion.

## FACTS

On December 8, 1981, or approximately ten (10) months prior to the filing of the Chapter 7 petition, Just In commenced an action in the United States District Court for the Southern District of New York (the "District Court Action") against Vasu alleging copyright infringement of a textile pattern, unfair trade practices and unfair competition. Just In sought, *inter alia*, $500,000 in damages. About eight months later in early August, 1982, Just In served an amended complaint which added Ivan Melamed and Susan Melamed, the principals and shareholders of Vasu, as defendants.

Approximately one month before the filing of the Chapter 7 petition and on September 30, 1982, Just In entered into a settlement agreement with the three defendants, Vasu, Ivan and Susan Melamed, in the District Court Action. Pursuant to the terms of the agreement, Vasu and the Melameds agreed to pay to Just In $9,000 in full settlement of Just In's copyright infringement, unfair competition and unfair trade practice claims against them. The Debtor and the Melameds represented that they had sold no more than approximately 14,509 yards of fabric bearing the disputed design and that there was no outstanding inventory of the fabric remaining. The three defendants further agreed permanently to cease and desist from any activity with respect to the disputed textile design. A consent judgment was entered on October 7, 1982 permanently enjoining the three defendants from use of designs substantially similar to the plaintiff's copyrighted design.

Payment to Just In of the $9,000 due under the settlement agreement was apparently made on September 29, 1982 prior to the signing of the settlement agreement. Payment was made in the form of a bank check payable to Just In issued by Chemical Bank on September 29, 1982 in the amount of $9,000. On September 29, 1982, the Debtor issued its own check in the amount of $9,000 to Chemical Bank. In the upper left hand corner of the check was the notation: "For settlement of Just In-Materials Designs, Ltd."

The Debtor's schedules reflect creditors are owed in excess of $500,000. The total assets scheduled by the Debtor are $27,955. The Trustee presently is holding assets of the Debtor's estate totalling $130,000.

## DISCUSSION

In order to recover a payment alleged to be preferential, the Trustee must establish, by a preponderance of the evidence, each element of the cause of action created by Section 547(b) of the Bankruptcy Code.[1]

---

1. Section 547(b) provides:
   "Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
     (A) on or within 90 days before the date of the filing of the petition; or

   (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
     (i) was an insider; and
     (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
   (5) that enables such creditor to receive more than such creditor would receive if—
     (A) the case were a case under Chapter 7 of this title;
     (B) the transfer had not been made; and

*Matter of Kennesaw Mint, Inc.,* 32 B.R. 799, 803 (Bkrtcy.N.D.Ga.1983). There is no dispute that the $9,000 payment to Just In was made within 90 days of the filing of the Chapter 7 petition. Thus, Code § 547(b)(4) is satisfied.

### Section 547(b)(3)—"Insolvent"

Turning to Code § 547(b)(3), Just In has disputed that the Debtor was insolvent. The schedules filed by the Debtor reflect a substantial excess of liabilities over assets. Nor does the amount recovered by the Trustee beyond the value of the assets stated in the petition eliminate the deficit.

Code § 547(f) provides:

"For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

This presumption requires Just In to come forward with some evidence to rebut the assertion of insolvency. *Matter of Lucasa International, Ltd.,* 13 B.R. 596 (Bkrtcy.S. D.N.Y.1981). The mere speculation that the schedules may not be accurate would be insufficient to rebut the statutory presumption at trial. *See Matter of Emerald Oil Co.,* 695 F.2d 833 (5th Cir.1983). Just In argues that discovery is necessary on the issue of insolvency to determine whether the schedules are accurate, and until such time as discovery can be had, the motion should be denied. Although discovery should perhaps have already been had, apparently it was not. The court will permit Just In further discovery on this issue. At trial, unless Just In comes forward with evidence sufficient to rebut or meet the presumption, the court will be bound to rule in the Trustee's favor on this issue.

### Section 547(b)(2)—"Antecedent Debt"

█ Just In denies that the settlement payment was "for or on account of an antecedent debt owed by the Debtor before

(C) such creditor received payment of such debt to the extent provided by the provisions

such transfer was made" and thus that Code § 547(b)(2) is not satisfied. Just In states that:

"it may very well be that a *claim* of the defendant [Just In] came into being upon commencement of [defendant's] copyright suit against [Vasu]. However, it is submitted that no debt arose prior to September 30, 1982—the date of the Settlement Agreement involved herein." Brief at 7.

Just In then argues the finding of a preference requires payment of an antecedent debt, not an antecedent claim.

The term "antecedent debt" is not a term defined in the Bankruptcy Code. Of its component parts, the term "antecedent" is not defined; the term "debt" is defined in Code § 101(11) as "liability on a claim." Claim is defined in Code § 101(4) as:

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

"(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;"

"Creditor" is defined in Code § 101(9)(A) as an entity "that has a claim against the debtor that arose at the time of or before the order for relief." The differences in these three terms are ones of point of view: "debt" concerns itself with the *debtor's* obligation; "claim" concerns itself with the *creditor's* right. Bankruptcy Code § 547 in dealing with preference is written from the perspective of the debtor; thus it is appropriate that the term "debt" is used. No significance can be read into the use of the term "antecedent debt" rather than "antecedent claim."

of this title."

As the definition of "debt" is *"liability for a claim,"* it might be urged that the term "debt" carries with it the requirement that the debtor's obligation be an established or conceded one, not merely one asserted against it. This reading lacks persuasiveness. The Bankruptcy Code does not define the term "liability". Black's Law Dictionary (4th ed. 1968) contains the following definition:

"The word is a broad legal term. It has been referred to as of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, *contingent, or likely."* (Emphasis added.)

Further, the Code's definition of "claim" includes unliquidated, disputed and contingent rights to payment. There is liability on a claim even though the claim is disputed, contingent or unliquidated, providing that liquidation occurs, the dispute is resolved or adjudicated, and the contingency happens. Just In's argument that it may have been the holder of a claim at the time it commenced the District Court Action, but that the Debtor was not then correspondingly liable on a debt, is rejected in favor of simply symmetry: claim is the flip side of the debt coin. The legislative history states that "the terms [debt and claim] are co-extensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." H.R. No. 95–595, 95th Cong. 1st Sess. 309–310 (1977), U.S. Code Cong. & Admin.News 1978, 5787, 6266, 6267.[2]

The Bankruptcy Code has an expansive definition of "claim" that is a significant departure from the former Bankruptcy Act. Under the former Bankruptcy Act, a patent infringement claim which was not fixed as to liability prior to the filing of a petition in bankruptcy was not a "provable" claim. Thus no dividend or distribution under a plan was payable on the infringement claim and the claim was legally unaffected by any discharge, although there might be no remaining source from which it could ultimately be collected. *Haynes Stellite Co. v. Chesterfield, et al.,* 97 F.2d 985 (6th Cir.1938); *Goldsmith v. Overseas Scientific Corporation,* 188 F.Supp. 530 (S.D.N.Y.1960). The concept of provability was abandoned in the Bankruptcy Code. The definition of "claim" was expanded and no longer are claims not fixed as to liability on the date of the filing precluded from participation in the bankruptcy case. The effect of the broad definition of claim and the abandonment of the concept of provability is that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." H.R.Rep. 95–595, 95th Cong. 1st Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, 6266.

The Just In debt was clearly antecedent at the time of the settlement, as the debt was necessarily based on events occurring prior to the filing of the District Court Action some 10 months previously. There is no merit to Just In's argument that it did not receive payment on an antecedent debt as the settlement amount of $9,000 was paid to it before the settlement agreement was signed. This argument depends on there being some distinction between "debt" and "claim" which the court has rejected in this case. There has been no showing that the sale of allegedly infringing goods continued after the filing of the District Court Action or that it took place contemporaneously with the settlement so as to bring the settlement within one of the exceptions contained in Code § 547(c).

■ While there may be a superficial unfairness in finding a creditor who never intended to extend credit and did not have the opportunity to collect its claim contemporaneously exposed to a preference challenge, the unfairness is only superficial.[3]

---

**2.** To the extent that it is contrary the court rejects *In re King,* 9 B.R. 376, 4 C.B.C.2d 130, 131 (Bkrtcy.D.Oregon 1981).

**3.** Compare with *Feinblatt v. Block,* 456 F.Supp. 776, 780 (D.Md.1978) where the court stated: "[A] willing extension of credit is not necessary in order to create an antecedent debt

Many other types of creditors than copyright infringement claimants are without ability to collect their claims non-preferentially. Had Congress wished to exclude payment on disputed, unliquidated, or contingent claims from the scope of Code § 547(b), it could have done so. Congress expressly excepted such debts and claims in a number of sections. For example, Code § 109(e) excludes contingent or unliquidated debt from the computation of eligibility for Chapter 13 relief.[4] *See In re Richard Russell Sylvester and Irene Lehman Sylvester,* 19 B.R. 671, 8 B.C.D. 1306 (Bkrtcy.App. 9th Cir.1982). Likewise, the holders·of contingent claims are not eligible to be petitioning creditors in an involuntary petition under Code § 303(b).[5] *See Matter of Covey,* 650 F.2d 877 (7th Cir. 1981); *In re all Media Properties,* 5 B.R. 126, 2 C.B.C.2d 449 (Bkrtcy.S.D.Tx.1980).

This court will not read into Code § 547 a limitation which Congress has not chosen to include. Thus, the payment to Just In of $9,000 was a payment of an antecedent debt under Code § 547(b)(2).

*Section 547(b)(5)—"Receive More"*

■ In the usual preference case, the receive more, or greater percentage, requirement of Code § 547(b)(5) is not an issue once the other elements of the preference cause of action have been found. This case poses a special problem, however. The September 30, 1982 settlement agreement contemplated the possibility of disgorgement of the $9,000 payment and provided that, in the event Just In were required to give up the $9,000 paid to it, it could enter judgment for $18,000.[6] The Trustee has urged that this jump in the amount of the Just In claim is an unenforceable penalty. The court is of the opinion that whether it is a penalty or not must be judged by the facts. Was $9,000 a reasonable settlement based on Vasu's admitted sales? Or was it less than any probable judgment after trial but fixed at $9,000 because that was all the money available? If the later, the provision does not appear to be a penalty. These facts remain to be explored at trial.

The answer might affect the outcome of this preference action as a $9,000 payment

---

under the preference provision of the [Bankruptcy] Act. *Engelkes v. Farmers Co-operative Co.,* 194 F.Supp. 319, 326 (N.D.Iowa 1961). To the contrary, it is a well settled rule that property converted, embezzled, or otherwise taken by the bankrupt, or obtained by him by fraud, can be claimed from the bankrupt estate only so long as it can be definitely traced, with the consequence that an attempted repayment by the bankrupt prior to bankruptcy is a preference, except where made from the very property taken. *Morris Plan Industrial Bank of New York v. Schorn,* 135 F.2d 538, 539 (2d Cir.1943); *accord Atherton v. Green,* 179 F. 806, 808 (7th Cir.1910); *Malone v. Gimpel,* 151 F.Supp. 549, 554 (N.D.N.Y.1956), *aff'd,* 244 F.2d 954 (2d Cir.1957); *Dinkelspiel v. Garrett,* 96 F.Supp. 800, 804–05 (W.D.Ark. 1951); *see Cunningham v. Brown,* 265 U.S. 1, 11–12, 44 S.Ct. 424, 426–427, 68 L.Ed. 873 (1924)."

4. Code § 109(e), 11 U.S.C. § 109(e) provides: "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated secured debts of less than $350,000 . . . ."

5. Code § 303(b), 11 U.S.C. § 303(b), provides:

"An involuntary case is commenced by the filing with the bankruptcy court of a petition under Chapter 7 or 11 of this title—
(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability . . . if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims * * *"

6. The settlement agreement provides as follows: "6. It is further agreed that in the event the defendants or any of them, become parties to a bankruptcy proceeding, such that the payment made herein to the plaintiff is recovered by the defendants' creditors, the defendants hereby consent to the entry of a further judgment against the corporate defendant in the sum of $18,000.00, on three (3) days notice to the defendants' attorneys of record herein." Apparently the $9,000 paid was not the subject of a judgment. Thus, entry of an $18,000 judgment would appear to fix Just In's claim at $18,000, which is what counsel for Just In agreed was the correct interpretation. It might be urged, however, that the liability for the recovered $9,000 settlement amount remains and that the $18,000 is in addition to that amount, making a total of $27,000.

of a $9,000 claim is a 100% payment; however, a $9,000 payment of a $18,000 claim is a 50% payment; and a $9,000 payment is but 33⅓% of a $27,000 claim.[7] Whether the Trustee would prevail at 33⅓% or 50% is not entirely apparent from the facts submitted on the summary judgment motion and the court cannot rule on this issue at this time.

*Section 547(b)—"Property of the Debtor"*

■ It is well settled that transfers to a creditor for or on account of an antecedent debt are not avoidable as preferential transfers if it was not the Debtor's property that was transferred. *I-T-E Circuit Breaker Co. v. Holzman*, 354 F.2d 102 (9th Cir.1968); *Matter of Lucasa International, Ltd.*, 13 B.R. 596 (S.D.N.Y.1981); *In re Design 3 Ltd., Inc.*, 18 B.R. 431 (Bkrtcy. S.D.Fla.1982). Just In has asserted on information and belief that the payment to it was made with funds provided to the Debtor by Ivan and Susan Melamed and that it did not receive a transfer of property of the Debtor. If this is true, the Trustee would have failed to establish a prime element of its case and would lose.

■ The evidence submitted by the Trustee in its motion for summary judgment shows that the Debtor issued a check payable to Chemical Bank for $9,000 on the same date that Chemical Bank issued a bank check in the same amount payable to Just In. Further, the Debtor's check has a notation that it was for the Just In settlement. Just In has suggested that the Debtor's $9,000 check to Chemical Bank might have been a payment of a debt of the Debtor to Chemical. This suggestion seems weak. Nevertheless, it remains the fact that as Ivan and Susan Melamed were co-defendants in the District Court Action they might have advanced their own funds to the Debtor for the sole purpose of effecting all or part of the settlement payment. Resolving all ambiguities in favor of the party against whom summary judgment is asserted, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962), the court cannot say that the Trustee has satisfied its burden of showing the absence of a material issue of fact, *see Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142, 154 (1970). Just In is entitled to further discovery on this issue, and summary judgment must be denied. Nevertheless, the court is constrained to point out that, if at trial, the same evidence should be adduced by the Trustee and Just In offered no rebuttal evidence, the court would rule in the Trustee's favor on this point as the court can reasonably infer from the two checks that the Debtor was the source of the funds paid to Just In.

## CONCLUSION

The Trustee's motion for summary judgment is denied. The parties are directed to complete discovery within thirty (30) days; a joint pretrial order shall be submitted within sixty (60) days and a trial is hereby scheduled for June 28, 1984 at 10:00 a.m.

IT IS SO ORDERED.

---

**7.** Just In has stated that the greater percentage test must start by using its $500,000 claim for relief as a base. Payment of $9,000 on a $500,000 claim is only a 1.8% payment. This argument ignores the settlement agreement which is controlling since the agreement expressly contemplated and provided for the amount of Just In's claim should the payment be recovered as preferential or otherwise.