**In re ENERGY COOPERATIVE, INC., Debtor.**

**ENERGY COOPERATIVE, INC., Jay A. Steinberg, Trustee, Plaintiff–Appellant,**

v.

**SOCAP INTERNATIONAL, LTD., Defendant–Appellee.**

**No. 86–2980.**

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1987.

Decided Oct. 29, 1987.

Ronald Barliant, Miller, Shakman, Nathan & Hamilton, Chicago, Ill., for plaintiff-appellant.

Michael R. Hassan, Lord Bissell & Brook, Chicago, Ill., for defendant-appellee.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

MANION, Circuit Judge.

The district court granted summary judgment for defendant, SOCAP International, Ltd., in an adversary proceeding in which Jay A. Steinberg, bankruptcy trustee for the estate of the debtor, Energy Cooperative, Inc. (ECI), sought to recover a $1.6 million payment from ECI to SOCAP as an avoidable preference under 11 U.S.C. § 547(b). The trustee appeals that ruling. Because we find that ECI's payment to SOCAP was for an antecedent debt, and because the payment does not fall into the exceptions to the avoidable preference provision that SOCAP urges on appeal, we reverse the district court's grant of summary judgment for SOCAP, and remand for further proceedings.

I.

The relevant facts are undisputed. ECI owned and operated a petroleum refinery and SOCAP sold crude oil. In January, 1981, ECI agreed to purchase 80,000 tons of oil from SOCAP during each quarter of 1981. The contract required ECI to pay SOCAP by wire transfer within thirty days of the bill of lading date. The contract also required ECI to open an irrevocable letter of credit in SOCAP's favor at least ten days before the first day the oil was expected to be loaded; SOCAP would draw upon the letter of credit if ECI did not pay for the oil within thirty days.

On February 11, 1981, ECI nominated crude oil for SOCAP to deliver during March, 1981. On February 26, SOCAP informed ECI that based on the price formula the parties had agreed to, the oil would cost $39.75 per barrel. On March 3, SOCAP notified ECI that it would load the oil on March 16 for delivery to ECI. Under the contract, ECI was to open a letter of credit by March 6.

ECI never opened the letter of credit. Instead, on March 11, 1981, ECI repudiated the contract. ECI ostensibly repudiated the contract because of various market factors and because of its inability to obtain a letter of credit. Both parties agree, however, that ECI had a line of credit available from Continental Illinois Bank, and could have obtained the letter of credit; ECI just did not want to use its line of credit to secure payments to SOCAP.

Because ECI repudiated the contract, SOCAP never loaded any oil for or delivered any oil to ECI. On March 16, SOCAP notified ECI that it would hold ECI liable for any damages resulting from ECI's "breach of this agreement." *In re Energy Cooperative, Inc.*, No. 85–C–1562, Mem.Op. at 2 (N.D.Ill.1986) (hereinafter D.Ct.Op.). On March 20, ECI agreed to pay SOCAP approximately $1.6 million " 'as compensation for ECI's breach.' " *Id.* ECI paid SOCAP the $1.6 million on April 16.

On May 15, 1981 (within 90 days from the date ECI paid the $1.6 million to SOCAP), ECI filed a voluntary petition for reorganization under Chapter 11 of the 1978 Bankruptcy Code. The trustee subsequently sought in the district court to recover as an avoidable preference the $1.6 million ECI paid to SOCAP.[1]

The Bankruptcy Code's avoidable preference provision, 11 U.S.C. § 547(b), allows a bankruptcy trustee to recover certain transfers a debtor made before he filed a petition in bankruptcy. To avoid a transfer of property as a preference in this case, the

---

1. ECI, as a debtor in possession, *see* 11 U.S.C. § 1107, commenced an adversary proceeding in the bankruptcy court to recover the payment. ECI's Chapter 11 case was subsequently converted to a liquidation case under Chapter 7, 11 U.S.C. §§ 701–766. *See* 11 U.S.C. § 1112. The bankruptcy court appointed plaintiff, Jay A. Steinberg, as permanent trustee for ECI's estate in the Chapter 7 case, and substituted Steinberg as plaintiff in the adversary proceeding. The district court, upon SOCAP's motion, subsequently withdrew reference of the adversary proceeding from the bankruptcy court. *See* 28 U.S.C. § 157(d).

trustee must show that the transfer (1) was "to or for the benefit of a creditor"; (2) was "for or on account of an antecedent debt"; (3) was "made while the debtor was insolvent"; (4) was made on or within 90 days before the debtor filed his bankruptcy petition; and (5) enabled the creditor to receive more than the creditor would have received if the debtor had not made the transfer. *Id.*

Not all transfers that meet § 547(b)'s criteria are avoidable. Section 547(c) provides six exceptions to the avoidable preference provision. SOCAP raised (among other affirmative defenses) two of these exceptions in the district court: the contemporaneous exchange exception, 11 U.S.C. § 547(c)(1), and the ordinary course of business exception, 11 U.S.C. § 547(c)(2). Section 547(c)(1) provides that the trustee may not avoid a transfer that the debtor and creditor intended to be a contemporaneous exchange for new value given to the debtor and that was, in fact, a substantially contemporaneous exchange. Section 547(c)(2) provides that the trustee may not avoid a transfer that was: (1) a payment of a debt incurred in the ordinary course of business of the debtor and creditor; (2) made no more than 45 days after the debtor incurred the debt;[2] (3) made in the ordinary course of business of the debtor and creditor; and (4) made according to ordinary business terms.

ECI filed a motion for partial summary judgment in the district court, seeking to strike SOCAP's contemporaneous exchange and ordinary course of business defenses. SOCAP also moved for summary judgment, alleging that as a matter of law ECI's payment to SOCAP was not for an antecedent debt, and that ECI's payment fell under either the contemporaneous exchange or the ordinary course of business defenses. The district court granted SOCAP's motion for summary judgment, and denied ECI's motion for partial summary judgment.

The district court reasoned that ECI never incurred a debt to SOCAP because SOCAP never delivered any oil under the contract. Thus, ECI did not pay SOCAP on account of an antecedent debt; rather, the court found that ECI paid SOCAP for present consideration. D.Ct.Op. 6–9.

Alternatively, the district court held that even if ECI's payment was for an antecedent debt, the payment fell under 11 U.S.C. § 547(c)(2), the ordinary course of business exception to the avoidable preference provision. The court found that ECI incurred a debt and made the payment in the ordinary course of its and SOCAP's business because the payment arose from the oil purchase agreement that ECI and SOCAP made in the ordinary course of their business and because the payment was one that " 'a crude oil purchaser like ECI would *ordinarily* make if, like ECI, it wanted to continue as a participant in the international crude oil marketplace.' " *Id.* at 10 n. 8 (quoting supplemental affidavit of Robert C. Oebser) (emphasis in the district court's opinion). The district court also found that ECI made the payment according to ordinary business terms (wire transfer to SOCAP's bank), and that any debt ECI might have incurred (either upon breaching the contract or making the settlement agreement) was incurred less than 45 days before ECI made the payment. *Id.*

Finally, although the district court's opinion did not specifically mention the contemporaneous exchange exception, the opinion suggests that the court found ECI's payment a contemporaneous exchange for new value. The district court stated "that the settlement payment was made for present consideration, not for an antecedent debt," D.Ct.Op. at 5, and that "the settlement payment was a contemporaneous exchange for release from any future obligations." *Id.* at 10 n. 8. Although the opinion does not expressly say so, the district court apparently believed that the release constituted new value under § 547(c)(2).

---

**2.** Congress amended § 547(c)(2) in 1984 by deleting the requirement that the debtor make the transfer 45 or fewer days after incurring the debt. Pub.L. No. 98–353, § 462(c), 98 Stat. 378

(1984). The 45–day requirement still applies in this case because the 1984 amendments apply only to bankruptcy cases filed 90 days after July 10, 1984. *Id.* § 553, 98 Stat. 392.

The trustee appeals the district court's ruling, contending that, as a matter of law, ECI paid SOCAP on account of an antecedent debt. The trustee further contends that, as a matter of law, ECI's payment fell under neither the contemporaneous exchange nor ordinary course of business exceptions to avoidability.

## II.

We first examine whether ECI paid SO-CAP on account of an antecedent debt.[3] To determine whether ECI paid SOCAP on account of an antecedent debt, we must determine when ECI incurred a debt to SOCAP. Although the Bankruptcy Code does not, in so many words, define when a debtor "incurs" a debt, the Bankruptcy Code's definitions of "debt" and "claim" go a long way in answering that question. The Bankruptcy Code defines a debt as a "liability on a claim." 11 U.S.C. § 101(11). The Code defines a claim as a:

(A) right to payment, *whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,* legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, *whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed,* secured or unsecured;

11 U.S.C. § 101(4) (emphasis added). On its face, § 101(4) indicates a congressional intent to broadly define claim; § 101(4)'s legislative history supports this reading. In enacting § 101(4), Congress sought to give claim "its broadest possible definition...."[4] Under this broad definition of claim, "all legal obligations of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case."[5]

■ By defining a debt as a "liability on a claim," Congress gave debt the same broad meaning it gave claim. Furthermore, "the concepts of debt and claim are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." Senate Report at 23, 1978 U.S.Code Cong. & Ad.News at 5809; see *also* House Report at 310, 1978 U.S.Code Cong. & Ad.News at 6267. In other words, when a creditor has a claim against a debtor—even if the claim is unliquidated, unfixed, or contingent—the debtor has incurred a debt to the creditor. *See In re Vasu Fabrics, Inc.,* 39 B.R. 513, 516–17 (Bankr.S.D.N.Y.1984).

The trustee contends that ECI incurred a debt to SOCAP when it contracted to purchase crude oil from SOCAP. This argument has some appeal, given the Code's broad definition of debt. However, holding that ECI incurred a debt upon making the contract would create a conflict with at least two circuits. *See In re Gold Coast Seed Co.,* 751 F.2d 1118, 1119 (9th Cir.1985) (under forward contract for commodities, buyer incurs debt at the time goods are delivered, not at the time buyer makes the contract); *In re Iowa Premium Service Co., Inc.,* 695 F.2d 1109, 1111–12 (8th Cir. 1982) (en banc) (debtor incurs debt for interest on promissory note when interest

---

**3.** The district court did not decide whether ECI's payments met any of § 547(b)'s other criteria. For purposes of our analysis, we assume that ECI's payment did meet all of § 547's other criteria. We decide, however, only whether ECI paid SOCAP on account of an antecedent debt.

**4.** S.Rep. No. 95–989, 95th Cong., 2d Sess. 22, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5808 (hereinafter "Senate Report"); H.R. Rep. No. 95–595, 95th Cong. 2d Sess. 309, *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5963, 6266 (hereinafter "House Report").

**5.** Senate Report at 22, 1978 U.S.Code Cong. & Ad.News at 5808; House Report at 309, 1978 U.S.Code Cong. & Ad.News at 6266 (emphasis added); *see also* House Report at 180, 1978 U.S.Code Cong. & Ad.News at 6141 ("All claims against the debtor, whether or not contingent or unliquidated, will be dealt with in the bankruptcy case"); *In re Robinson,* 776 F.2d 30, 34–35 (2d Cir.1985) (citing House and Senate Reports and collecting cases emphasizing the breadth of the definition of claim), *reversed on other grounds, Kelly v. Robinson,* —— U.S. ——, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); *In re Vasu Fabrics, Inc.,* 39 B.R. 513, 517 (Bankr.S.D.N.Y. 1984).

falls due, not when debtor executes note). *See also In re Jolly*, 574 F.2d 349, 351 (6th Cir.1978) (holder of an executory contract has no claim until the debtor rejects the contract).

■ We need not decide whether ECI incurred a debt upon contracting with SO-CAP because we agree with the trustee's alternative argument that ECI incurred a debt to SOCAP when ECI repudiated the contract on March 11. Illinois law, which the parties do not dispute governed the contract, provides that:

> When either party repudiates [a] contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may (b) resort to any remedy for breach.

Ill.Ann.Stat. Ch. 26, para. 2–610 (Smith–Hurd 1963). Among the remedies for breach Illinois law provides is recovery of damages. *Id.* at para. 2–703(d) & (e). The normal measure of damages when a buyer repudiates a contract to purchase goods "is the difference between the market price at the time and place for tender and the unpaid contract price ... but less expenses saved in consequence of the buyer's breach." *Id.* at para. 2–708(1). Thus, ECI's repudiation constituted a breach of the contract (and the record shows that SOCAP treated ECI's repudiation as a breach) and SOCAP had a right to pursue damages (that is, payment) for that breach. When ECI breached the contract with SO-CAP, SOCAP acquired a claim against ECI; therefore, ECI incurred a debt to SOCAP. *Cf. In re Jolly*, 574 F.2d at 350, 351 (rejecting an executory contract constitutes breach of the contract and gives rise to a claim).

It is irrelevant that SOCAP's ultimate recovery for ECI's breach was contingent on SOCAP's willingness to pursue its remedy for breach and on the future rise or fall of the crude oil market. Whether or not a claim and debt exist does not depend on whether a creditor chooses to pursue its claim. Furthermore, under the Bankruptcy Code's broad definition, a contingent claim is still a claim; and, as we have seen, when a claim exists, so does a debt.

Despite the Bankruptcy Code's broad definitions of claim and debt, SOCAP maintains that ECI did not incur a debt because SOCAP never delivered crude oil under the contract; therefore, ECI was never legally bound to pay SOCAP. SOCAP's argument is unpersuasive. None of the cases SO-CAP cites to support its argument involved an anticipatory breach. *See, e.g., In re Gold Coast Seed Co.*, 751 F.2d 1118; *In re Emerald Oil Co.*, 695 F.2d 833 (5th Cir. 1983); *In re Iowa Premium Service Co.*, 695 F.2d 1109; *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1982). Thus, these cases do not apply here.

■ SOCAP's reasoning ignores Congress' overriding intent in enacting § 547(b): to promote equal distribution among a bankrupt's creditors. *See* House Report at 178, 1978 U.S.Code Cong. & Ad. News at 6138; *Barash*, 658 F.2d at 510. SOCAP does not even bother to argue that ECI's anticipatory breach did not create a claim (albeit contingent and unliquidated) in SOCAP's favor. Where a claim exists, so does a debt. Had ECI not paid SOCAP, SOCAP would be just another creditor of ECI's estate. ECI's payment to SOCAP merely compromised a debt and depleted ECI's estate of $1.6 million that would have been available for its other creditors. This was precisely the type of payment that Congress intended § 547 to reach.

Even if ECI paid SOCAP on account of an antecedent debt, however, the district court could still have properly granted SO-CAP summary judgment if ECI's payment fell under either the contemporaneous exchange or ordinary course of business exceptions to the avoidable preference provision. *See* 11 U.S.C. § 547(c)(1) & (2). Neither exception, though, applies here.

■ The contemporaneous exchange exception, § 547(c)(1), does not apply because SOCAP did not give new value to ECI. At the time ECI filed its petition, 11 U.S.C. § 547(a)(2) stated:

> "New value" *means* money or money's worth in goods, services, or new credit, or release by a transfer of property pre-

viously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, but does not include an obligation substituted for an existing obligation.

(Emphasis added.)[6] Contrary to SOCAP's assertion, § 547(a)(2)'s definition of new value is exclusive. *See In re Fuel Supply and Terminaling, Inc.*, 72 B.R. 752, 757–58 (Bankr.S.D.Tex.1987). 11 U.S.C. § 102(3) states that " 'includes' and 'including' are not limiting...." Congress, though, did not state that "new value *includes*"; Congress stated that "new value *means.*" Congress knew how to create an open-ended definition, and specifically stated how it would create an open-ended definition. By using "means" instead of "includes" in § 547(a)(2), Congress created an exclusive, rather than open-ended, definition for new value. *See* 1 L. King, *Collier on Bankruptcy* ¶ 101.00[2], at 101–15 (15th ed. 1987). ("Those [definitions] stating a definition in terms of 'means' attempt a precise definition"); *see also In re Olson*, 66 B.R. 687, 694 (Bankr.D.Minn.1986) (Waiver of future child support payments not new value because the waiver was not new value within § 547(a)(2)'s definition).

SOCAP appeals to legislative history to circumvent this straightforward construction of § 547(a)(2). But, even if relevant (given § 102(3)'s clear language), the sparse legislative history does not help SOCAP. Both the Senate and House Reports state that "new value ... [is] defined in its ordinary sense[ ], but [is] defined to avoid any confusion or uncertainty surrounding the term[ ]." Senate Report at 87, 1978 U.S.Code Cong. & Ad.News at 5873; House Report at 372, 1978 U.S.Code Cong. & Ad.News at 6328. An open-ended definition of new value would not help to "avoid confusion or uncertainty."

SOCAP argues that in exchange for its payment, ECI received a release from its contract obligations and continued "credibility and goodwill with SOCAP and in the international crude oil marketplace." SO-

CAP does not (and cannot) argue that this "new value" is "money or money's worth in goods, services or new credit," or a transfer of property to ECI that ECI had previously transferred to SOCAP. In fact, SOCAP concedes that ECI did not receive goods, services, or money. We agree with the trustee that the release and goodwill do not fall within § 547(a)(2)'s definition of new value. To hold otherwise would be inconsistent with the contemporaneous exchange exception's purpose. We refuse to stretch § 547(a)(2)'s language beyond Congress' clear intent.

The contemporaneous exchange exception exists to protect "transfer[s] that [are] not really on account of an antecedent debt." House Report at 373, 1978 U.S. Code Cong. & Ad.News at 6329. That exception does not fit here. ECI paid SOCAP $1.6 million to settle a breach of contract claim that arose more than a month before ECI paid SOCAP; in other words, ECI paid off an antecedent debt. SOCAP's release (or the "goodwill") makes no difference. If a release (and possible "goodwill") resulting from settling a claim was new value bringing the settlement payment within the contemporaneous exchange exception, creditors would rush to settle for cash at the first hint of the debtor's financial trouble rather than wait and pursue a claim in bankruptcy. Those creditors who successfully settle will likely receive more than they otherwise would have, leaving less for the creditors who do not successfully settle. This would be inconsistent with Congress' intent to deter creditors from dismembering the debtor during his slide into bankruptcy and to promote equity among creditors. *See* House Report at 178–79, 1978 U.S.Code Cong. & Ad.News at 6138, 6139. Congress certainly did not intend the contemporaneous exchange exception to achieve such a result.

Furthermore, a payment is not a preference unless the debtor is insolvent and the creditor receives more than he would have otherwise received. *See* 11 U.S.C.

---

**6.** In 1984, Congress amended § 547(a)(2). *See* Pub.L. No. 98–353, § 462(a)(1), 98 Stat. 377–78 (1984). The amendment does not apply in this case. See note 1, *supra.* Even if the 1984 amendment did apply, it would not change our analysis.

§ 547(b)(3) & (5). Therefore, in a preference situation a release is likely to be worthless to other creditors. The release does not free up any assets for other creditors because the debtor could not have paid the preferred claim anyway. All the payment for the settlement and release does is deplete the debtor's estate at the other creditors' expense, frustrating Congress' intent to promote fair distribution among creditors. Because the release and "goodwill" are not new value, the contemporaneous exchange exception does not apply to ECI's payment.

■ ECI's payment to SOCAP also does not fall under the § 547(c)(2) ordinary course of business exception. Congress enacted § 547(c)(2) "to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or creditors during the debtor's slide into bankruptcy." House Report at 373, 1978 U.S.Code Cong. & Ad. News at 6329; *see also* Senate Report at 88, 1978 U.S.Code Cong. & Ad.News at 5874. Section 547(c)(2) protects "recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." 4 L. King, *Collier on Bankruptcy*, ¶ 547.10, at 547–42 (15th ed. 1987). In other words, § 547(c)(2) protects "ordinary trade credit transactions that are kept current." *Barash*, 658 F.2d at 511. *See also In re Daikin Miami Overseas, Inc.*, 65 B.R. 396, 398 (S.D.Fla.1986); *In re Bourgeois*, 58 B.R. 657, 659 (Bankr.W.D. La.1986). ECI's payment, however, was not part of any recurring, customary trade transactions. It was a one-time payment to settle a breach of contract claim.

SOCAP argues that ECI's debt to SOCAP arose out of incidents—the breach and settlement—related to the oil purchase contract, an ordinary business transaction for both ECI and SOCAP. SOCAP also argues that ECI's payment was one a small oil purchaser like ECI would make if it wanted to maintain credibility in the world oil market. Thus, SOCAP contends, ECI incurred its debt to and paid SOCAP in the ordinary course of both SOCAP's and ECI's businesses. SOCAP further maintains that it did nothing abnormal to take advantage of ECI's financial position or to gain an upper hand on ECI's other creditors. Therefore, according to SOCAP, since ECI incurred its debt to SOCAP less than 45 days before paying SOCAP (either, as we have held, when ECI breached the contract or, alternatively, when ECI and SOCAP agreed on the settlement) and since ECI made its payment according to ordinary business terms (by wire transfer to SOCAP's bank, a normal mode of payment and one called for in the contract), ECI's payment to SOCAP meets all of § 547(c)(2)'s conditions.

■ To support its argument, SOCAP submitted affidavits to the district court from Robert L. Oebser, a former ECI employee, and Nicolas Fresneau, a SOCAP employee. Oebser stated in his affidavit that ECI's payment to SOCAP was "the type a crude oil purchaser like ECI would ordinarily make if, like ECI, it wished to continue as a participant in the international crude oil marketplace." Fresneau stated in his affidavit that ECI, "a relatively small participant in the international crude oil market" made the payment "to preserve ECI's credibility with SOCAP so that should ECI seek to purchase crude oil in the future, SOCAP would look favorably upon doing business with ECI."

■ These affidavits fall far short of establishing that ECI incurred its debt to SOCAP or paid SOCAP in the ordinary course of either ECI's or SOCAP's business. Although a transaction need not occur often to be in the ordinary course of business, a creditor asserting § 547(c)(2) must show that the debtor incurred its debt and paid the creditor in ways similar to other transactions. *See In re Economy Milling*, 37 B.R. 914, 922 (D.S.C.1983) (debt not incurred and payment not made in the ordinary course of business because creditor did not show that he or other creditors had conducted similar transactions with the debtor before); *see also In re AOV Industries, Inc.*, 62 B.R. 968, 975 (Bankr.D.Colo. 1986); *In re Ewald Bros., Inc.*, 45 B.R. 52,

58 n. 14 (Bankr.D.Minn.1984). The Oebser and Fresneau affidavits do not establish that ECI normally breached oil purchase contracts and then paid settlements without receiving any oil, nor do the affidavits establish that ECI had ever breached an oil purchase contract with and paid a settlement to SOCAP. The affidavits do not even establish that the course of events between ECI and SOCAP are normal in the oil industry. At most, the affidavits show only ECI's subjective business reasons for breaching the contract: to preserve its goodwill and standing in the oil industry.

ECI might have had good business reasons for breaching the contract and paying the settlement. Those reasons, however, offer little solace to ECI's other unsecured creditors, who are faced with splitting a smaller estate because of the payment. Furthermore, those reasons do not establish that ECI's actions were within the ordinary course of its or SOCAP's business. Without more of a showing, we agree with the court in *In re Daikin Miami Overseas, Inc.*, that "payments made pursuant to a settlement agreement, which appear to be the result of an antecedent debt and prior dispute between the parties, are simply not in the ordinary course of business." 65 B.R. at 398. Thus, SOCAP may not assert the ordinary course of business exception as a defense to avoidability.

### III.

On the undisputed facts in this case, ECI is entitled to judgment on the antecedent debt, contemporaneous exchange, and ordinary course of business issues as a matter of law. Since SOCAP fully argued all these issues in the district court, we reverse the district court's grant of summary judgment for SOCAP and remand to the district court with instructions to enter summary judgment for ECI on the antecedent debt, contemporaneous exchange, and ordinary course of business issues. *See generally* C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2720, at 28–35 (2d ed. 1983) (appellate court may order district court to enter summary judgment for nonmoving party on an issue if no issue of material fact exists, moving party had an opportunity to meet the issue in the district court, and nonmoving party is entitled to judgment as a matter of law). Granting summary judgment for ECI on these issues does not end this case; the district court must still determine if the trustee may recover ECI's payment in light of § 547(b)'s other criteria and SOCAP's remaining affirmative defenses. Because of our disposition, we need not consider SOCAP's contention that ECI's motion for partial summary judgment was improper.

REVERSED AND REMANDED WITH INSTRUCTIONS.