**In re ENERGY COOPERATIVE, INC., Debtor.**

**ENERGY COOPERATIVE, INC., Jay A. Steinberg, Trustee, Plaintiff,**

v.

**GULF OIL CORPORATION, Defendant.**

**Bankruptcy Nos. 81 B 5811, 83 A 1492.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 17, 1987.

Nachman, Munitz & Sweig, Chicago, Ill., for plaintiff.

Michael R. Hassan and Joni Goldstein, Lord, Bissell & Brook, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ERWIN I. KATZ, Bankruptcy Judge.

This case is before the Court on cross-motions for summary judgment. Energy Cooperative, Inc. (ECI) seeks summary judgment as to the affirmative defenses raised by Gulf Oil Corporation (Gulf) and Gulf seeks summary judgment in its favor.

Both parties have filed statements of un-contested material facts pursuant to Rule 12. Neither party has controverted the statements of the other and all of the statements are thus considered as admitted for purposes of this motion.

Basically, the uncontested facts are that on January 15, 1981, the parties entered into a contract for the sale of crude oil. The time frame was such that the sale was a forced sale required by the United States Department of Energy under its mandatory allocation program. Gulf delivered 383,308 barrels of crude oil to ECI on February 9, 1981. On the date of the delivery, pursuant to the request of Gulf, ECI paid to Gulf, the amount of $15,307,500, which was an estimated amount to be later adjusted.

Under the regulations, the actual price for the oil was based on a formula which took into consideration historical prices with many variables. Due to the pricing regulations, the final price of the oil could not be determined until after the close of the month of delivery. The earliest Gulf could calculate the final price to charge a buyer under the allocation program was seven working days after the close of the month in which the crude oil was delivered. It could easily take 45 days or longer from the date of sale before Gulf could issue a final billing.

There were many sales in that period by Gulf to other customers under the same procedure and within the same parameters. On April 8, 1981, Gulf sent its invoice to ECI for the final amount due, $15,642,799.48. There remained a balance due of $335,299.48 after credit for the estimated payment. On April 21, 1981, ECI paid the amount of $335,229.48 to Gulf.

This bankruptcy case was commenced on May 15, 1981.

The trustee seeks to avoid the payment of $335,229.48 as a preferential transfer under Section 547(b) of the Bankruptcy Code, 11 U.S.C. 547(b). Gulf argues essentially that its receipt of the payment falls within the exceptions found in Section 547(c)(1) and 547(c)(2), in that either the transfer was a "contemporaneous exchange for new value" or "payment of a debt incurred and made by the debtor in the ordinary course of business".[1]

None of the parties addressed the issue of whether or not the ECI payments met any of the other criteria required under Section 547(b).

After the issues were briefed in this case, the Seventh Circuit decided the case of *ECI v. SOCAP*, 832 F.2d 997 (7th Cir. 1987). Both parties have addressed the question of *SOCAP's* application in supplemental letters to the court dated November 1, 1987 and November 3, 1987, respectively.

The facts in *SOCAP* were somewhat different than the facts before this court, however the governing principles are the same. In *SOCAP*, ECI made an anticipatory breach of its contract with Socap, one of its suppliers. No oil was ever delivered by Socap under its contract due to the breach. ECI subsequently settled Socap's claim by payment of a settlement sum to Socap. The trustee's avoidance claim in that matter was, as here, based on the preference sections of the Code. The creditor, Socap, sought the protection of 547(c)(1) and 547(c)(2). In that case, ECI filed a motion for partial summary judgment and Socap filed a counter-motion for summary judgment. The Seventh Circuit ruled in favor of ECI.

Initially, this court must determine when the debt from ECI to Gulf was incurred in order to calculate the 45-day period under § 547(c)(2). ECI asserts that the debt was incurred on February 9, 1981, when Gulf delivered approximately 390,000 barrels of crude oil to ECI in Nederland, Texas. Gulf asserts that the debt was incurred within the 45-day period, inasmuch as it was not able to acquire all the information necessary for the final billing until the seventh working day following the close of February 1981, i.e. March 10, 1981, and there was only a 42-day lapse between March 10, 1981, and April 21, 1981, the date ECI made the disputed transfer.

Gulf further argues that no debt was incurred at the time of the delivery of the oil, since at that time the estimated payment by ECI might have been equal to the

---

**1.** As pointed out by both parties this case is governed by the Bankruptcy Reform Act of 1978 as enacted prior to the 1984 Amendments.

final price, or ECI may have even been entitled to a refund from Gulf if the final price was later determined to be less than the estimated price.

This court disagrees with Gulf's analysis.

This court agrees with the reasoning in 4 *Collier on Bankruptcy*, ¶ 547.38 (15th Ed. 1979) that, "the probably better view is that the debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to the debt," *Barash v. Public Finance Corp.*, 658 F.2d 504, 509 (7th Cir.1981).

The Bankruptcy Code defines "debt" as a "liability on a claim" 11 U.S.C. § 101(11). "Claim" is defined under § 101(4) of the Code so as to include all equitable and legal obligations of the debtor, no matter how remote or contingent. Congress thus gave debt the same broad meaning as it gave claim. *ECI v. SOCAP*, 832 F.2d 997, 1001 (7th Cir.1987).

When ECI acquired the oil from Gulf, Gulf acquired a claim against ECI. The broad legislative intent of § 101(4) would clearly encompass the type of obligation incurred by ECI by accepting delivery of the oil upon payment of only an estimated amount. This estimated amount was fixed by Gulf, which could have, admittedly, either underestimated, overestimated, or coincidentally made an exact calculation. However, the legal obligation, incurred by ECI, however contingent, equitable or remote until ultimate calculation did give rise to an obligation. It incurred a liability. That liability was discharged by payment of the estimated amount together with the concomitant extension of credit for any undetermined amount to be later adjusted by an accounting between the parties.[2]

Although factually distinguishable, the *SOCAP* opinion recognizes that whether or not a claim and debt exist does not depend on whether a creditor chooses to pursue its claim or whether or not damages result due to the future rise or fall of the market. That case recognized that under the Bankruptcy Code's broad definition a contingent claim is still a claim; and when a claim exists, so does a debt.

In *Braniff Airways v. Exxon*, 814 F.2d 1030 (5th Cir.1987) the court considered the question of setoffs under § 553 of the Code. In determining whether Exxon's debt to Braniff was pre-petition or post-petition, the court was required to analyze and define "debt" and when the debt arose. In that case Braniff made prepayments to Exxon for future deliveries of fuel. In that case Braniff argued that the debt was not incurred until the amount of the unused prepayment could be calculated, which was a post-petition occurrence. Exxon, however, argued that when the prepayment was made, Braniff became entitled to either jet fuel or a refund and, therefore, Exxon incurred the liability and received the money, although the actual amount was not fixed. The court held that all of the transactions which gave rise to the debt occurred prior to the petition. The deferred calculation did not affect the effectiveness of the debt having arisen. Here, too, all of the delivery had been completed. There was nothing which remained to be done which could effect the amount of the indebtedness, except to perform the calculations. All the variables were already fixed.

The cases cited by Gulf are inapplicable.

*In re H & A Construction*, 65 B.R. 213 (Bankr.D.Mass.1986), and *In re Mindy's*, 17 B.R. 177 (Bankr.S.D.Ohio 1982) turned upon the specific language of the agreements between the parties not present here.

The "public utility" cases which apply the "date of calculation" or "date of meter reading" tests have no application to a single delivery such as made by Gulf.

Gulf further argues that it is entitled to protection under § 547(c)(2) inasmuch as its

**2.** Gulf also argues that it was forced into this situation by the requirements of the mandatory allocations. It can be readily conceded that this transaction was not voluntary. Nowhere, however, has Gulf indicated that it could not have asked for an overpayment nor that the coerced transaction was intended by law to alter the transaction from the "credit" arrangement.

transactions were in the normal and usual course of business and the payments received were made in the ordinary course of business as they became due. The simple answer to Gulf's argument is that if Congress intended that all regular consumer installment payments were to escape the trustee's avoidance power, without the restriction of the 45–day requirement, then Congress would not have inserted the limitation. Congress did, in fact, later amend so as to remove the 45–day period. However, inasmuch as this cause falls within that period of time when the 45–day requirement existed in the Code, we are bound to apply that requirement in testing the payments made here. Congress imposed the 45–day limit as reflective of a normal trade cycle in the course of ordinary commerce. Congress chose not to include specially refined situations such as exist in the oil industry. *See Barash v. Public Finance Corp.*, 658 F.2d 504, 511 (7th Cir.1981).

■ The contemporaneous exchange exception under 11 U.S.C. § 547(c)(1) does not apply since the payment by ECI was in actual fact not contemporaneous with delivery of the oil to ECI. Additionally, the later payment of the added amount due was without new value being given by Gulf to ECI. *See SOCAP, supra* and *Barash, supra.*

On the undisputed facts in this case, ECI is entitled to judgment on the contemporaneous exchange and ordinary course of business issues as a matter of law. Partial summary judgment is hereby entered in favor of ECI and against Gulf as to the affirmative defenses raised by Gulf in its answer and the motion of Gulf for summary judgment is hereby denied.

This case is hereby set for pretrial and to set a trial date for the remaining issues in this case on January 12, 1988 at the hour of 9:30 o'clock a.m.