In re PHOENIX RESTAURANT
GROUP, INC., et al.,
Debtors.

Phoenix Restaurant Group,
Inc., et al., Plaintiffs,

v.

Fuller, Fuller & Associates,
P.A., Defendant.

Bankruptcy No. 301–12036.
Adversary No. 303–0667.

United States Bankruptcy Court,
M.D. Tennessee.

Nov. 8, 2004.

Beth A. Dunning, Dunning Law Group, PLLC, Brentwood, TN, for Consolidated

Debtors acting by and through the Plan Administrator.

Robert H. Waldschmidt, Howell & Fisher PLLC, Nashville, TN, for Defendant.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issues on summary judgment are whether the payment of attorney fees as part of a litigation settlement was 1) to or for the benefit of a creditor under 11 U.S.C. § 547(b)(1); 2) on account of an antecedent debt under 11 U.S.C. § 547(b)(2); 3) a contemporaneous exchange for new value under 11 U.S.C. § 547(c)(1); or 4) followed by new value under 11 U.S.C. § 547(c)(4). The attorney fee payment was made to or for the benefit of a creditor and on account of an antecedent debt. The defenses of contemporaneous exchange for new value and subsequent new value are not available.

### I. FACTS

Phoenix Restaurant Group, Inc. ("PRG"), a Georgia corporation, resulted from a 1996 merger between Denwest Restaurant Corp. and American Family Restaurants. The principal business of PRG was operating Denny's family style restaurants pursuant to franchise agreements with Advantica Restaurant Group, Inc. (and its predecessors and successors). Throughout the 1990's PRG acquired Denny's locations, and expanded into other restaurant concepts, including Black–Eyed Pea restaurants. In September 2001, PRG operated 96 Denny's restaurants and 91 Black–Eyed Pea restaurants primarily in Florida, Texas, Arizona, Colorado and Oklahoma.

On October 18, 2001, an involuntary Chapter 7 proceeding was filed against PRG in the Middle District of Florida. The involuntary case was transferred to

the Middle District of Tennessee by order entered October 29, 2001. On October 31, 2001, PRG moved to convert the involuntary Chapter 7 case to a voluntary Chapter 11. Also on October 31, 2001, five affiliates of PRG—Denam, Inc., Phoenix Foods, Inc., Black–Eyed Pea U.S.A., Inc., Prufrock Restaurants of Kansas, Inc. and Texas BEP, L.P.—filed voluntary Chapter 11 cases in the Middle District of Tennessee. An order converting PRG's case to Chapter 11 was entered November 6, 2001.

The debtors remained in possession. On April 29, 2002, the debtors filed a Joint Liquidating Plan of Reorganization and Disclosure Statement. On October 23, 2002, the First Amended Joint Liquidating Plan was confirmed. The Confirmed Plan substantively consolidated the debtors, and appointed PENTA Advisory Services as Plan Administrator. The Plan vested the Plan Administrator with authority to continue and commence Estate Causes of Action, as defined in the Plan.

On October 31, 2003, the Plan Administrator filed more than 200 adversary proceedings to avoid prepetition transfers as preferential under 11 U.S.C. § 547(b). This action against Fuller, Fuller & Associates, P.A. ("Fuller") seeks to avoid and recover a one-time payment of $10,567.91.

Fuller was retained as counsel by Access for the Disabled, Inc. and Robert Cohen—plaintiffs in a lawsuit filed in the United States District Court for the Southern District of Florida against PRG and others, that sought relief under 42 U.S.C. § 12181, et seq., for violations of the Americans With Disabilities Act (the "ADA"). The litigation ended in a settlement. The Settlement Agreement was signed by PRG, on August 15, 2001, and by the plaintiffs in that litigation on August 31, 2001. The Settlement Agreement required PRG to undertake various barrier removals and modifications to bring its properties into compliance with the ADA. A reinspection was scheduled for November 30, 2001, and liquidated damages were agreed upon in the event PRG failed to perform.

The Settlement Agreement further provided that the plaintiffs' attorney fees and costs were to be paid by the defendants:

> The amounts to be paid shall be established by counsel for the parties by separate letter agreement. If, however, counsel for the parties are unable to determine the attorneys' fees, including litigation expenses, expert's fees and costs to be paid, the amount to be paid shall be determined by the District Judge or a Magistrate Judge as the Court deems appropriate.... Upon agreement by the parties or determination by the District Judge, Court, or a Magistrate Judge of attorney's fees, litigation expenses, expert's fees and costs issue, such fees and costs shall be paid to plaintiffs' counsel and expert, as the case may be, on or before ten (10) days from the date of such agreement or determination.

(Fuller Aff. Ex. 1 at ¶ 2.)

Pursuant to a separate Stipulation Agreement for Fees and Costs, PRG agreed to pay attorney fees, costs and expenses of $10,567.91. The Stipulation was signed on behalf of PRG on August 15, 2001, and on behalf of the ADA plaintiffs on August 17, 2001.

PRG issued a check for $10,567.91 to Fuller, Fuller & Associates, P.A., dated August 21, 2001, and received by Fuller on August 22, 2001. (Fuller Aff. Ex. 4.) Pursuant to the Stipulation, the funds were not to be disbursed until "the Stipulation for Dismissal has been delivered to the Court."

A Stipulation for Dismissal with Prejudice was executed by PRG and the plain-

674

tiffs on August 15, 2001 and August 17, 2001, respectively. (Fuller Aff. Ex. 3.) On September 4, 2001, the district judge signed the Final Order of Dismissal in the ADA litigation. (Fuller Aff. Ex. 5.)

Fuller moves for summary judgment with respect to whether the payment of attorney fees was "to or for the benefit of a creditor" under § 547(b)(1), "made for or on account of an antecedent debt" under § 547(b)(2) and on its defenses under § 547(c)(1) and (c)(4).[1] In support of its motion, Fuller offered the affidavit of Lawrence Fuller, including exhibits. Plaintiff opposes Fuller's motion, but did not also move for summary judgment.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989). The court is not to " 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir.2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.' " *Id.* (quoting *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). All inferences are drawn in the light most favorable to the nonmoving party. *Spradlin v. Jarvis (In re Tri–City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir.2003) (citations omitted). The party opposing a motion for summary judgment, however, " 'may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.' " *In re Tri–City Turf Club, Inc.*, 323 F.3d at 442–43 (internal citations and quotations omitted). *See also Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate.' " *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir.2001) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir.1998)).

### B. "To or for the benefit of a creditor" and "on account of an antecedent debt"

Subsection 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any

1. Fuller also asserted in its answer untimely service of process and the limitation in 11 U.S.C. § 546, but did not include these defenses in its motion for summary judgment.

transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

■ Section 547 is "designed 'to accomplish proportionate distribution of the debtor's assets among its creditors, and therefore to prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all.'" *Stevenson v. Leisure Guide Am., Inc. (In re Shelton Harrison Chevrolet, Inc.)*, 202 F.3d 834, 837 (6th Cir.2000) (quoting *In re Nucorp Energy, Inc.*, 902 F.2d 729, 733 (9th Cir. 1990)). To prevail in a preference action, the plaintiff must demonstrate by a preponderance of the evidence the existence of each of the elements of § 547(b). *See* 11 U.S.C. § 547(g); *Corzin v. Decker, Vonau, Sybert & Lackey, Co., L.P.A. (In re Simms Constr. Servs. Co.)*, 311 B.R. 479, 484 (6th Cir. BAP 2004).

■ Fuller asserts there was no debt to the law firm or the ADA plaintiffs until the consent decree was entered by the district court. Citing *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), Fuller contends that under fee shifting statutes, like the ADA, the obligation to pay the prevailing party's attorney fees and costs does not arise until the consent decree is entered by a court. Fuller concludes that Plaintiff can produce no set of facts to prove that the payment of attorney fees was "to or for the benefit of a creditor," or "for or on account of an antecedent debt."

Logic and the Bankruptcy Code stand squarely in the way of Fuller's argument. An agreement in settlement of litigation necessarily arises out of a pre-existing dispute between the parties. If that pre-existing dispute constitutes a debt for bankruptcy purposes then a payment in settlement of that dispute is on account of an antecedent debt.

As the Seventh Circuit recognized in *Energy Cooperative, Inc. v. SOCAP International, Ltd. (In re Energy Cooperative, Inc.)*, 832 F.2d 997, 1001 (7th Cir.1987), "[a]lthough the Bankruptcy Code does not, in so many words, define when a debtor 'incurs' a debt, the Bankruptcy Code's definitions of 'debt' and 'claim' go a long way in answering that question." *Debt* is defined as "liability on a claim." 11 U.S.C. § 101(12). *Claim* in turn is defined as:

(A) right to payment, *whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,* legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, *whether or not such right to an equita-*

*ble remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed,* secured or unsecured[.]

11 U.S.C. § 101(5) (emphasis added). A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(9).

■ *Claim* is the operative term in the definition of both creditor and debt. As has been often repeated, "Congress sought to give claim 'its broadest possible definition ....' ... [such that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.' " *Energy Cooperative,* 832 F.2d at 1001 (citations omitted).

Nearly 20 years ago, in *Roach v. Edge (In re Edge),* 60 B.R. 690 (Bankr. M.D.Tenn.1986), this court analyzed when a claim arises for bankruptcy purposes. " [W]hile federal law controls which claims are cognizable under the Code, the threshold question of when a right to payment arises, absent overriding federal law, 'is to be determined by reference to state law.' " *Id.* at 695 (quoting *Avellino & Bienes v. M. Frenville Co.,* 744 F.2d 332, 337 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985)). The expansive wording of § 101(5) and § 502 make difficult the application of state (or other nonbankruptcy) law because the Bankruptcy Code:

goes further than the former Act to affect rights which are contingent and unmatured under state law. It is conceptually difficult to refer to state law to define when a 'right to payment' arises where by federal law a 'right to payment' spawns a claim notwithstanding that the right is contingent, unmatured, etc. State courts use the same words (contingent, unmatured) to describe rights which are yet to become cognizable under state law. The plain meaning of §§ 101(4) [now 101(5)] and 502(b)(1) is that state law will not control the existence or allowance of a bankruptcy claim where under state law the right to payment depends only on one or more of the enumerated disabling characteristics.

*Edge,* 60 B.R. at 696.

In *Edge,* the question was whether the victim of the debtor's prepetition negligence had a claim in bankruptcy when the negligence was discovered postpetition. Because the Bankruptcy Code "recognizes a 'right to payment' for the victim of a debtor's prepetition misconduct at the earliest point in the relationship between victim and wrongdoer," the victim in *Edge* had a claim against the debtor that was "contingent" and "unmatured" at the petition, but nonetheless a "right to payment" for bankruptcy purposes. *Id.* at 699, 705. Fuller cites no Sixth Circuit or Supreme Court development to suggest abandonment of the conclusions in *Edge.*

*Edge* points firmly to the conclusion that Fuller and/or the ADA plaintiffs had a right to payment—a claim for bankruptcy purposes—antecedent to PRG's payment of the attorney fees portion of that debt. The ADA plaintiffs claimed a right to payment and other remedies from PRG well in advance of settlement of the ADA litigation. The ADA plaintiffs included a demand for attorney fees in the district court complaint—filed many months before those fees were paid to Fuller by PRG. Payment of attorney fees as part of the settlement of the ADA plaintiffs' claims came after those claims were reduced to judgment, matured and were liquidated as contemplated in § 101(5).

This conclusion is consistent with the statutory source of the award of attorney

fees to Fuller. The ADA provides: "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual." 42 U.S.C. § 12205.

*Buckhannon,* cited by Fuller, does not require a different conclusion. In *Buckhannon,* the Supreme Court held that a federal fee shifting statute that allowed fees to a prevailing party did not allow fees to a party that failed to secure a judgment on the merits or a court-ordered consent decree, but rather achieved the desired result because of a voluntary change in the defendant's conduct. *Buckhannon,* 532 U.S. at 600, 121 S.Ct. 1835.

*Buckhannon* certainly illustrates how nonbankruptcy law defines the contingencies attendant to a statutory right to payment, such as a fee-shifting statute. *Buckhannon* would counsel that Fuller's claim for attorney fees was contingent at the commencement of the ADA lawsuit. *Buckhannon* speaks not at all to the broad definition of claim in bankruptcy wherein Congress includes even rights to payment that are contingent, unmatured, unliquidated and not reduced to judgment. *See Kadjevich v. Kadjevich (In re Kadjevich),* 220 F.3d 1016, 1020 (9th Cir.2000) (Claim for attorney fees under California fee shifting statute did not qualify as administra-

tive expense because the " 'source' of the award of attorney fees is the pre-petition state-court fraud action. . . . For the purpose of establishing the priority of a claim for attorney fees, we see no principled basis to distinguish a pre-petition *contract* that provides for fees from a pre-petition *tort claim* that results in fees."); *Bioplasty, Inc. v. First Trust Nat'l Ass'n (In re Bioplasty, Inc.),* 155 B.R. 495, 498 (Bankr.D.Minn.1993) ("The actions that gave rise to the class action suit gave the class action plaintiffs a right to pursue damages against Bioplasty. Even though any ultimate right to payment was disputed, contingent, unliquidated, and not reduced to judgment, such right still constitutes a claim under the Bankruptcy Code, and '[w]here a claim exists, so does a debt.' ") (citation omitted).

Fuller and the ADA plaintiffs were creditors with claims against PRG at the time of payment to Fuller. The debt PRG paid to Fuller at the time of settlement was antecedent, i.e., preceding in time. *See United States Trustee v. First Jersey Securities, Inc. (In re First Jersey Securities, Inc.),* 180 F.3d 504 (3d Cir.1999) ("[A]n antecedent debt owed by the debtor occurs when a right to payment arises— even if the claim is not fixed, liquidated, or matured.");[2] *Levine v. Custom Carpet Shop, Inc. (In re Flooring Am., Inc.),* 302 B.R. 394, 402 (Bankr.N.D.Ga.2003) (Claim, and therefore debt, arose "when the debtor allegedly breached the exclusive territo-

---

**2.** To the extent *Lewis v. Diethorn,* 893 F.2d 648 (3d Cir.1990), held that payment in settlement was not on account of an antecedent debt, the case is unpersuasive and not altogether consistent with the Third Circuit's later decision in *First Jersey Securities.* The *Lewis* panel concluded that the debtor's payment was not on account of an antecedent debt because the payment was made "in exchange for their undertaking to terminate the lawsuit in Pennsylvania court and so to remove the *lis*

*pendens* from the property index." *Id.* at 650. The *Lewis* court found that the debtor received "freedom from the risk of litigation, together with the rise in the value of the property which resulted when the *lis pendens* was lifted." *Id.* As explained below, the court's reasoning perhaps addresses the issue of new value, but it offers no basis for the conclusion that the claim paid by the challenged transfer was not an antecedent debt.

ry provisions of the Franchise Agreement and when the debtor allegedly stopped paying rebates to [defendant].").

This conclusion finds support from other courts. In *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311 (5th Cir.1996), *cert. denied*, 519 U.S. 1057, 117 S.Ct. 686, 136 L.Ed.2d 611 (1997), pursuant to a prepetition settlement agreement the debtor transferred $3.3 million to minority shareholders for expenses incurred in a proxy contest and related lawsuits. When the debtor sued to recover the transfer as a preference, the shareholders defended that the transfer was not "on account of an antecedent debt." *Id.* at 314. The shareholders (the "Parks Group") prevailed before both the bankruptcy and district courts:

> The bankruptcy court here held that, unlike the claim for equitable relief itself, the Parks Group's affiliated request for costs and attorneys' fees was a "claim" because it did give rise to a right to payment in connection with the equitable relief requested. The bankruptcy court went on to hold, however, that these litigation demands were not a "debt"—even though the court acknowledged that in bankruptcy the terms "claim" and "debt" are usually synonymous.
>
> The court reasoned that "[h]ad Southmark taken the corporate action sought by the Parks Group in the proxy contest and related Lawsuits, Southmark would have had no liability to the Parks Group for the payment of any costs and attorneys' fees. Therefore, in this case, no right to payment came into play and no debt was owed by Southmark to the Parks Group until the proxy contest and related Lawsuits were settled in accordance with the terms of the Settlement Agreement." Therefore, concluded the court, as the transfer in question was

made prior to, or at least concurrently with, the Agreement's execution, the transfer was not made on account of an antecedent debt. The district court affirmed this holding on essentially the same reasoning, adding that the Parks Group could not have filed a suit for these costs and fees alone, but rather they were ancillary to the request for injunctive relief.

*Southmark*, 88 F.3d at 316–17.

The Fifth Circuit disagreed. First, the Fifth Circuit held that the shareholders' demand for attorney fees and costs prior to execution of the settlement agreement constituted a "claim" for bankruptcy purposes:

> Although the right to payment of these expenditures may have been disputed and even contingent, such a right is nevertheless encompassed by the expansive statutory definition of the term "claim." This conclusion also comports with the legislative history of the statute. The House and Senate Reports state that "[b]y this broadest possible definition [of the term 'claim'] ... the bill contemplates that all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." Thus, like the bankruptcy court, we conclude that, prior to the execution of the Agreement, the Parks Group's amicable and judicial demands for costs and attorneys' fees were "claims" within the intendment of the bankruptcy code.

*Id.* at 317 (footnotes omitted; emphasis in original).

The Fifth Circuit then held that this claim was an antecedent debt for purposes of the preference statute:

> The legislative history of the bankruptcy code explains the relationship be-

tween debt and claim: "The terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." Moreover, the Supreme Court has held that the meanings of the terms "debt" and "claim" are coextensive. Indeed, we have proclaimed that, based on Supreme Court authority, "there is no distinction between 'debt' and 'claim' for purposes of the Bankruptcy Code."

In the absence of a compelling reason why this line of authority would not be applicable to the instant case, we conclude that, as the Parks Group had a "claim" for these expenditures prior to the execution of the Agreement, a "debt" of Southmark also existed for these expenditures prior to the execution of the Agreement. Thus, the $3.3 million transfer was on account of an antecedent debt owed by Southmark.

*Id.* (footnotes omitted).

Finally, the Fifth Circuit found statutory support, logic and good policy in this outcome: "Although the instant case presents a rare if not unique fact situation, it nevertheless falls within the broad statutory language of the preference statute. This conclusion is not only consistent with the statute and the case law, but also comports with the general observation that a settlement agreement resolves preexisting claims." *Id.* at 318.

Here, had PRG not paid Fuller, Fuller would be just another general creditor of PRG's estate. PRG's payment to Fuller satisfied an antecedent debt and depleted PRG's estate of $10,567.91 that would have been available for all creditors.

## C. Contemporaneous Exchange for New Value and Subsequent New Value

■ Fuller next argues that even if the payment was a preference, it is excepted from avoidance by § 547(c)(1) because it was contemporaneous with resolution of the request for injunctive relief and dismissal of the action; or that the payment was followed by new value, as described in 11 U.S.C. § 547(c)(4), in the form of a "blue print" for compliance with the ADA and the signed order dismissing the case.

Both defenses to preference recovery argued by Fuller require receipt by the debtor of "new value." New value "means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2). This statutory definition is exclusive. *See Energy Cooperative,* 832 F.2d at 1003 (citations omitted) ("Congress knew how to create an open-ended definition, and specifically stated how it would create an open-ended definition. By using 'means' instead of 'includes' in § 547(a)(2), Congress created an exclusive, rather than an open-ended, definition for new value."); *see also Peltz v. New Age Consulting Servs., Inc.,* 279 B.R. 99, 103–04 (Bankr. D.Del.2002).

"A vast majority of courts agree that 'new value' for purposes of § 547 must be something of tangible economic value." *Aero–Fastener, Inc. v. Sierracin Corp. (In re Aero–Fastener, Inc.),* 177 B.R. 120, 137 (Bankr.D.Mass.1994) (citing *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.),* 837 F.2d 224, 229–31 (5th Cir.1988); *Simon v. Engineered Protection Sys., Inc. (In re Hatfield Elec. Co.),* 91 B.R. 782, 786 (Bankr.N.D.Ohio 1988); *Fredman v. Milchem, Inc. (In re Nucorp Energy, Inc.),* 80 B.R. 517, 519 (Bankr.S.D.Cal.1987), *aff'd,* 902 F.2d 729 (9th Cir.1990) ("the inquiry is whether the estate received something

with economic value"); *Charisma Inv. Co. v. Airport Sys., Inc. (In re Jet Florida Sys., Inc.)*, 841 F.2d 1082, 1084 (11th Cir. 1988) (consideration fitting the definition of "new value" requires receipt by the debtor of a material benefit)). This view is in keeping with the purpose new value serves: replenishing the estate.

■ Settlement agreements which require expenditures by the debtor without tangible enhancement of the estate rarely provide new value of the sort contemplated by § 547(a)(2). *See Energy Cooperative*, 832 F.2d at 1003 ("release from contract obligations and continued 'credibility and goodwill with SOCAP and in the international marketplace' " was not "new value"); *Peltz v. New Age Consulting Servs., Inc.*, 279 B.R. 99 (Bankr.D.Del.2002) (release given in settlement of state court litigation did not provide any new value for purposes of an exception to preference recovery); *Carolyn's Kitchen, Inc. v. Cybergenics Corp. (In re Carolyn's Kitchen, Inc.)*, 209 B.R. 204 (Bankr.N.D.Tex.1997) ("The payments under the Settlement agreement are not contemporaneous exchanges for new value."); *Bioplasty, Inc. v. First Trust Nat'l Ass'n (In re Bioplasty, Inc.)*, 155 B.R. 495 (Bankr.D.Minn.1993) (Dismissal of class action and release of an injunction did not constitute money or money's worth for purposes of § 547(a)(1) and (c)(1).). As the Seventh circuit observed in *Energy Cooperative:*

> [A] payment is not a preference unless the debtor is insolvent and the creditor receives more than he would have otherwise received. Therefore, in a preference situation a release is likely to be worthless to other creditors. The release does not free up any assets for other creditors because the debtor could not have paid the preferred claim anyway. All the payment for the settlement and release does is deplete the debtor's es-

tate at the other creditors' expense, frustrating Congress' intent to promote fair distribution among creditors.

*Energy Cooperative*, 832 F.2d at 1003–04.

Fuller insists that in exchange for the payment of attorney fees, the Debtor received a "blue print" to comply with the ADA and freedom from future litigation. These elements of the settlement are not "money or money's worth in goods, services or new credit." They are more akin to one obligation substituted for another. The Settlement Agreement obligated the Debtor to incur substantial "blue print" costs to make its properties ADA compliant. PRG paid its debt for attorney fees and suffered the blue print obligations for its failure to comply with the ADA. The Bankruptcy Code excludes from the definition of new value the substitution of new obligations for an existing liability. Nothing received by PRG in the Settlement of the ADA litigation replenished the Debtor's estate in money or money's worth.

*Lewis v. Diethorn*, 893 F.2d 648 (3d Cir.), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990), cited by Fuller, found new value in the context of a settlement, but has been widely criticized and is factually distinguishable. In *Lewis*, the Third Circuit stated that the debtor's prepetition settlement payment—which removed a lis pendens on the debtor's real property—freed the debtor from risk of further litigation and increased the value of the real property. *Lewis*, 893 F.2d at 650. Perhaps release of the *lis pendens* in *Lewis* equates to money or money's worth for § 547(a)(2) purposes. But the contrast here is stark: PRG was relieved from ADA liability by paying attorney fees and obligating itself to spend significant funds to bring its properties into ADA compliance. The payment of attorney fees as part of this settlement was not replenished

with value given by Fuller or the ADA plaintiffs.

Similarly, *Waldschmidt v. Mid–State Homes, Inc. (In re Pitman)*, 843 F.2d 235 (6th Cir.1988), does not assist Fuller here. The predicate for the Sixth Circuit's finding of new value in *Pitman* was enhancement of the estate when the defendant conveyed title to real property in exchange for the debtor's execution of a mortgage. Factually and logically, it is the new value predicate that is missing in the context of this settlement.

## III.  Conclusion

Fuller's motion for summary judgment will be denied by separate order.

## ORDER

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that the Defendant's motion for summary judgment is DENIED.