**In re CAROLYN'S KITCHEN, INC., dba K & S Trading Company, Debtor.**

**CAROLYN'S KITCHEN, INC., Plaintiff,**

**v.**

**CYBERGENICS CORPORATION, L & S Research Corporation, Scott Chinery, individually, and Ken McLellan, individually, Defendants.**

**Bankruptcy No. 395–37216RCM–11. Adversary No. 396–3001.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

March 31, 1997.

Charles R. Chesnutt, Dallas, TX, for Plaintiff.

Marvin R. Mohney, Dallas, TX, for Ken McLellan.

Brian J. Molloy, Woodbridge, NJ, for L & S Research.

## MEMORANDUM OPINION

ROBERT C. McGUIRE, Chief Judge.

On March 3 through March 6, 1997, the above suit was tried. Following are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

During the course of the trial, defendants L & S Research Corporation ("L & S") and Scott Chinery ("Chinery") were granted a motion for judgment with respect to certain of the claims of Carolyn's Kitchen, Inc., dba K & S Trading Company ("Debtor" or "Plaintiff") when Debtor rested. Such rulings are incorporated herein by reference and adopted as additional findings and conclusions.

Cybergenics Corporation, a prior defendant herein, settled with the Debtor, and claims between such parties are no longer involved herein.

The parties' contentions, as set forth in the pretrial order, limit their recovery herein to the claims contained therein. *Matter of Perez*, 954 F.2d 1026 (5th Cir.1992). At trial, but not in the pretrial order, L & S and Chinery raised certain contentions by reason of certain interlocutory orders signed by the United States District Judge on June 6, 1996 and February 24, 1997, in Civil Action No. 95–1420(DRD), styled *L & S Research Corporation, Plaintiff, v. Ken McLellan, a/k/a Albert K. McLellan, t/a K & S Trading Company; Carolyn's Kitchen, Inc. t/a KC Sports and Fitness Company, and t/a K & S Trading Company, Defendants, v. Scott Chinery, Third–Party Defendant* in the United States District Court for the District of New Jersey. (DX 73). Such interlocutory orders, as possible defenses, were not relevant because they were not raised in the pretrial order. *Id.* Further, such interlocutory orders have no *res judicata* effect. *F.D.I.C. v. Massingill*, 24 F.3d 768 (5th Cir.1994); *Travelers Indem. Co. v. Erickson's, Inc.*, 396 F.2d 134 (5th Cir.1968).

The claims litigated back and forth herein between Debtor, L & S, and Chinery are core proceedings over which the Court has jurisdiction under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (F), (H) and (O), and 1334.

Plaintiff claims that, through a settlement agreement dated May 5, 1995 ("Settlement Agreement"), it incurred certain obligations and transferred the sum of $1,010,000 to L & S within one year prior to the commencement of the case, and that these obligations and this transfer should be voided under 11 U.S.C. § 548. The Court previously found that there was no fraudulent conveyance. Plaintiff received reasonably equivalent value (§ 548(a)(2)) in return for such transfer or settlement obligation and agreement. Further, there was insufficient proof that Plaintiff was insolvent at the time of, or as a result of, the Settlement Agreement.

Plaintiff also claims that a portion of the $1,010,000 was transferred within ninety days prior to the commencement of the case and that said portion was a preferential transfer within the scope of 11 U.S.C. § 547.

Plaintiff claims that the contract should be voided because it was breached. Plaintiff also claims that it has been damaged by L & S and Chinery through breach of contract and tort.

Defendants L & S and Chinery deny that the Settlement Agreement is voidable as a fraudulent conveyance under 11 U.S.C. § 548, or that any portion of the settlement proceeds constitutes a preferential transfer within the meaning of 11 U.S.C. § 547.

Chinery further asserts that any claim against him under 11 U.S.C. § 547 must fail because Chinery is a mediate transferee under 11 U.S.C. § 550(a)(2), who received the transfer for value, in good faith, and without knowledge of the voidability of the transfer.

Both L & S and Chinery further assert that the claim under 11 U.S.C. § 547 must fail because, among other reasons, the Settlement Agreement involved a contemporaneous exchange for new value.

L & S and Chinery further assert, and the Court previously found, that any claim under 11 U.S.C. § 548 must fail because the Debtor received reasonably equivalent value at the time of the transfer, represented by the settlement agreement. The Debtor was neither insolvent at the time of, or as a result of, any transfer represented by the Settlement Agreement.

L & S and Chinery further assert that, to the extent a preferential transfer or fraudulent conveyance is proven, then McLellan is equally liable to reimburse the estate for the challenged transfers.

While unartfully worded, and, while the wrong Code section is cited (the cite should have been to § 550(a)(1), instead of § 550(c)), it appears that, arguably, under paragraph 3.u. of the pretrial order, the Plaintiff is making such a claim against McLellan. Such a claim is a core proceeding.

### L & S Counterclaim Against Plaintiff

L & S alleges that the proof of claim which it has filed in the Chapter 11 proceeding should be quantified in this adversary proceeding and should be allowed.

### Plaintiff's Response to the Counterclaim

Plaintiff denies that it owes L & S the sum of money demanded by L & S and takes the position that, when all setoffs and damages are considered, the L & S proof of claim should be disallowed.

### Preference Claims

Plaintiff filed bankruptcy November 15, 1995. As against L & S, Plaintiff seeks to avoid the following payments, under the Settlement Agreement, as preferences:

| Date of Transfer | Amount of Transfer |
|---|---|
| 8/30/95 | $122,500 |
| 10/04/95 | $122,500 |
| 11/04/95 | $122,500 |
| TOTAL | $367,500 |

The payments under the Settlement Agreement are not contemporaneous exchanges for new value. *Southmark Corp. v. Schulte Roth & Zabel (Matter of Southmark)*, 88 F.3d 311 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 686, 136 L.Ed.2d 611 (1997). An "antecedent debt" is not defined by the Code, but a debt is antecedent if it is incurred before the transfer. 5 *Collier on Bankruptcy* ¶ 547.03[4] (15th ed. rev.1996); *Matter of Cavalier Homes of Georgia, Inc.*, 102 B.R. 878, 885 (Bankr. M.D.Ga.1989).

### Whether the May 5, 1995 Settlement Agreement Itself Was a Preference

■ Since this transfer was outside the ninety-day preference period, there is no § 547(f) insolvency presumption, and Plaintiff's insolvency at such time was not proven to the extent Plaintiff makes claims against McLellan on same as an insider preference under § 547(b)(4)(B).

It appears that Plaintiff's contentions referred to in the pretrial order as against L & S, Chinery, and McLellan, did not contend that the Settlement Agreement itself was a preference.

### Alleged Insolvency During August 30, 1995 Through November 4, 1995

■ L & S rebutted the ninety-day § 547(f) insolvency presumption. Barry Russell, *Bankruptcy Evidence Manual*, § 301.4 (1997). Debtor filed bankruptcy on November 15, 1995. It appears that Debtor was insolvent on or about November 3 or 4, 1995, and thereafter. Plaintiff did not prove that Debtor was insolvent on or about August 30, 1995 or October 4, 1995. Plaintiff paid $122,500 on November 4, 1995, to L & S, a creditor of Debtor. The payment was made on an antecedent debt owed to L & S and was made while Debtor was insolvent. Such $122,500 payment allowed L & S to recover more than such creditor would receive if (a) the case were a case under Chapter 7, or (b) the transfer had not been made and such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code § 547(b)(5). While L & S became a secured creditor, as a result of the Settlement Agreement, its collateral was worth considerably less than the debt against it. Plaintiff is therefore entitled to recover such $122,500 from L & S. §§ 547 and 550(a)(1).

■ Chinery was not a creditor of Plaintiff from May through November 1995. In November 1994, L & S completed the sale of its business to Cybergenics except for this receivable from Plaintiff. L & S ceased doing business on November 11, 1994 except for its accounting and legal expenses and maintaining of products liability insurance.

Chinery was sole shareholder of L & S. Chinery had a royalty agreement with L & S whereby he was to receive from L & S approximately 80% of its net profits after payment of legal and other expenses.

Under Paragraph 1.c. of the Settlement Agreement, the L & S payments under the Settlement Agreement were to be wired to the trust account of L & S's attorneys Alpert & Raice, P.C. Alpert & Raice thereafter issued its checks to L & S. The November Alpert & Raice check was issued November 7, 1995 to L & S Research Corp. (DX 63). Chinery's testimony was substantially credible. He testified that, when L & S got its checks, it just had legal, accounting and products liability insurance expenses, but had not continued in business. Recently, in October, L & S paid a products liability insurance premium of $250,000. Although the year was not stated, it appears that such insurance was probably paid in October 1996. All payments from L & S to Chinery were on his royalty agreement. When he received the money in question, he had no knowledge of the potential voidability of any transfer because of the financial condition of Plaintiff. Of the $1,010,000 payments under the Settlement Agreement, Chinery received approximately $1,000,000. As to Chinery, the issue on the November 1995 payment is whether he was a § 550(a)(1) or (a)(2) transferee.[1] If Chinery was a § 550(a)(2) transferee, then, under § 550(b)(1), Plaintiff could not recover from Chinery because he took for value in good faith and without knowledge of the voidability of the transfer. Chinery is found to be a mediate transferee under § 550(a)(2)

---

1. **§ 550. Liability of transferee of avoided transfer**

   (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may ·recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
   (2) any immediate or mediate transferee of such initial transferee.

who received the November 1995 transfer for value in good faith and without knowledge of the voidability of the transfer.

Of the seven checks from Alpert & Raice (DX 63), it appears that the May 9, 1995 check for $275,000 from McLellan and the June 6, 1995 check from Debtor for $122,500 went into Chinery's personal household account because they were endorsed by him and his wife. (He could not remember if she was an officer of L & S). The November 7, 1995 check in question, for $122,500, has an illegibly endorsed individual signature on it. It is not endorsed by L & S. It is the only check where the depositing bank has a stamped endorsement reading: "Credited to the account of the within named payee. Endorsement guaranteed Summit Bank." The payee on the check is L & S Research Corporation.

Plaintiff claims that L & S is the alter ego of Chinery or that the facts are sufficient to justify piercing the corporate veil of L & S. The Plaintiff's proof was insufficient on both these contentions.

The L & S and Chinery trial brief, at page 40, contends that Alpert & Raice were a Conduit for L & S. This is true.

An issue exists as to whether L & S also was a mere conduit for Chinery with respect to the November 1995 check, thereby making Chinery the initial transferee, or whether Chinery was the entity for whose benefit such transfer was made. (§ 550(a)(1)).

As previously noted, of the $1,010,000 paid to L & S under the settlement, approximately $1 million thereof was eventually paid to Chinery by L & S.

In *Matter of Coutee*, 984 F.2d 138, 140 n. 2 (5th Cir.1993), it is stated:

A trustee may not recover an avoidable preference from a transferee other than the initial transferee if the transferee takes for value, in good faith, and without knowledge of the voidability of the transfer avoided. 11 U.S.C. z 550(b)(1). Here, the trustee stipulated that Security First did take for value, in good faith, and without knowledge of the voidability of the transfer. Thus, the trustee may recover from

Security First only if it was the initial transferee.

*See also, In re Baker & Getty Fin. Servs., Inc.,* 974 F.2d 712 (6th Cir.1992); *Bonded Fin. Servs. v. European Amer. Bank,* 838 F.2d 890 (7th Cir.1988). Did Chinery have dominion over such $122,500? "[A]n entity does not have 'dominion over the money' until it is, in essence, 'free to invest the whole [amount] in lottery tickets or uranium stocks.' *Bonded,* 838 F.2d at 894". *In re Bullion Reserve of N. America,* 922 F.2d 544, 549 (9th Cir.1991). *Matter of Coutee,* 984 F.2d at 141.

As stated in 4 *Collier on Bankruptcy* § 550.02:

Under the "dominion or control" test, the initial transferee, for purposes of determining from which party the trustee may recover an avoidable preference, is the party which *first gains dominion* or control over the funds transferred, meaning the right to put the money to one's own use as opposed to holding the funds only for the purpose of fulfilling an instruction to make the funds available to someone else. *Matter of Coutee,* 984 F.2d 138, 28 C.B.C.2d 762 (5th Cir.1993).

(Emphasis added). It appears that L & S first gained dominion over the November 1995 check in question, and was the initial transferee thereof. Same was subject to the control of L & S to apply to overhead, etc., even though it apparently did not do so.

Chinery was not the initial transferee or entity for whose benefit such transfer was made within the meaning of § 550(a)(1).

■ McLellan was a co-maker of the $1,500,000 obligation of Debtor under the Settlement Agreement. As co-maker, McLellan is an entity for whose benefit such transfer was made within the meaning of § 550(a)(1) and is jointly and severally liable with L & S for such November 5, 1995, $122,500 payment subject to the limitation of a single satisfaction set forth in § 550(c). *Matter of Cavalier Homes of Georgia, Inc.,* 102 B.R. at 886, 889 n. 29.

Section 550(a)(1) states that the trustee may recover from the initial transferee or the entity for whose benefit the transfer

was made. Section 102(5) of the Bankruptcy Code specifies that the term "or" is not exclusive. § See 11 U.S.C.A. § 102(5) (West 1979). Thus, Plaintiff may recover from any combination of the entities, subject to the limitation of a single satisfaction set forth in section 550(c).

*Id.* at 889 n. 29.

■ L & S apparently contends that the settlement released the preference claims referred to above. By its terms, the release only released claims "from anything which has happened up to now." The November 1995 preference payment occurred later, and, therefore, aside from any case Bankruptcy Code policy argument, the release, by its terms, does not apply.

Plaintiff failed to credibly prove any quantifiable monetary breach of contract or tort claim against L & S or Chinery to justify any voidance of the settlement agreement.

### *L & S Claim Herein*

On May 1, 1996, L & S filed a proof of claim in this bankruptcy for $4,333,141. Subject to the requirements of § 502(d), L & S has a claim in this bankruptcy of $3,323,141 (i.e., $4,333,141 less $1,010,000).[2] (PX 39, the Settlement Agreement). Such claim is minimally secured. (*See,* Settlement Agreement, ¶ 2).

### *McLellan's Individual Claims*

McLellan contends that the transfer of money, the release of any claims and defenses and the assumption of liabilities pursuant to the Settlement Agreement constitutes fraudulent conveyances avoidable under the Uniform Fraudulent Conveyance Act, as adopted in Texas, and under §§ 544 and 548 of the Bankruptcy Code.

McLellan also contends that he was induced to enter into the Settlement Agreement by fraudulent misrepresentations made by Chinery and L & S to McLellan and to

Debtor. But for the fraudulent misrepresentations of Chinery and L & S, he would not have entered into the Settlement Agreement, nor paid $275,000, nor released any claims against Chinery and L & S, nor assumed any liability to Chinery or L & S.

McLellan further contends that, based on the prior breaches of the Settlement Agreement by the parties, the Settlement Agreement should be set aside and rescinded, and all consideration transferred by the parties pursuant to the Settlement Agreement should be returned.

Pursuant to the federal and state Declaratory Judgment Acts, McLellan requests that the Court declare that the Settlement Agreement is null and void and return the parties to the status quo.

McLellan contends that, based upon the prior breaches of the Settlement Agreement by other parties, McLellan should be released from the Settlement Agreement and the breaching parties should be deemed to have waived their defenses.

### *Defendants L & S and Chinery*

Defendants L & S and Chinery's contentions have heretofore been set forth herein.

### *McLellan's Fraudulent Conveyance Claims*

■ McLellan lacks standing to bring fraudulent conveyance actions on behalf of Plaintiff.[3] Such causes of action belonged to Plaintiff. *In re MortgageAmerica Corp.,* 714 F.2d 1266 (5th Cir.1983).

### *Jurisdiction of the Court Over McLellan's Claims Against L & S and Chinery*

In his pleadings, McLellan adopted Plaintiff's jurisdiction allegations contending that these proceedings (and apparently his claims) are core proceedings. Although not raised in the pretrial order, L & S and Chinery con-

---

**2.** Under Paragraph 9 of the Settlement Agreement (PX 39), there might be some question about whether Plaintiff is entitled to such credit of $1,010,000, but, in final oral argument, L & S counsel apparently conceded such credit entitlement by requesting such net amount of $3,323,-141.

**3.** The issue of standing, like subject matter jurisdiction, is not subject to waiver even though the parties may not have raised it. *U.S. v. Hays,* 515 U.S. 737, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995).

tended in pleadings that the Court had no jurisdiction over these claims. The Court has an independent duty to address the issue of jurisdiction. *U.S. v. Hays*, 515 U.S. at —, 115 S.Ct. at 2435.

■ The claims of McLellan against L & S and Chinery are not core proceedings. 28 U.S.C. § 157(b).

In *Feld v. Zale Corp. (Matter of Zale Corp.)*, 62 F.3d 746, 752 *et seq.* (5th Cir.1995), the court stated:

In *In re Wood*, 825 F.2d at 93, we adopted the Third Circuit's test for determining whether a matter is "related to" a bankruptcy case and held that a matter is "related to" the bankruptcy case for § 1334 purposes if " *'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'* " *In re Wood*, 825 F.2d at 93 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)); *accord In re Walker*, 51 F.3d [562] at 569 [(5th Cir. 1995)]. Moreover, " '[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ... in any way impacts upon the handling and administration of the bankrupt estate.' " *In re Walker*, 51 F.3d at 569 (quoting *Pacor, Inc.*, 743 F.2d at 994). Conversely, the bankruptcy court has no jurisdiction over a matter that does not affect the debtor. *See Celotex*, 514 U.S. at 308 n. 6, 115 S.Ct. at 1499 n. 6 (reciting *Pacor* test and commenting that "whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor"). [footnote omitted] [emphasis added].

\*　　\*　　\*　　\*　　\*　　\*

Those cases in which courts have upheld "related to" jurisdiction over third-party actions do so because the subject of the third-party dispute is property of the estate[17] or because the dispute over the asset would have an effect on the estate.[18]

party action existed because assets at issue in claims against debtor were property of estate).

18. *See, e.g., 8300 Newburgh Rd. Partnership v. Time constr., Inc. (In re Time Constr., Inc.)*, 43 F.3d 1041, 1045 (6th Cir.1995) (explicitly applying same standard as Fifth Circuit and noting in dicta that third-party action was related to bankruptcy because outcome of action against sole shareholder directly impacted value of debtor's shares); *Abramowitz v. Palmer*, 999 F.2d 1274, 1278 (8th Cir.1993) (holding that third-party action was related to bankruptcy because debtor's rights in jointly-held property could not otherwise be determined); *Kaonohi Ohana, Ltd. v. Sutherland (In re Kaonohi Ohana, Ltd.)*, 873 F.2d 1302, 1306–07 (9th Cir.1989) (upholding "related to" jurisdiction over third-party action because specific performance remedy in third-party action would reduce damages in breach-of-contract claim against estate).

In *Matter of Wood*, 825 F.2d 90, 94 (5th Cir.1987), the Court stated:

Defendant Woodrow Barham argues that even if the court has jurisdiction over the claims against Dr. James Wood and his wife, it does not have jurisdiction over him because he is not a debtor-in-bankruptcy. The Bankruptcy Rules incorporate the joinder provisions of the Federal Rules of Civil Procedure allowing the joinder of other defendants. Joinder is allowed, however, only if an independent basis of federal jurisdiction exists to support the joined claim. We find that the claim against Woodrow Barham is "related to" the Wood's bankruptcy and, thus, its joinder is jurisdictionally supported.

The plaintiff has filed one complaint against the defendants seeking liability for their joint conduct. Success against any of the defendants will have a potential effect on the estate. For example, if Dr. Wood and his wife are held liable but Barham is not, the bankrupt estate may bear the entire burden of the judgment. If, on the other hand, Barham is found jointly liable, the estate may bear only a portion of the judgment. Moreover, in filing the complaint, the plaintiff challenged the combined actions of both the debtors and Barham, a non-debtor. Resolution of the dispute will necessarily involve, therefore, consideration of Barham's involvement in those actions. We find support in the Court of Appeals for the Sixth Circuit and lower courts, which have held that when the plaintiff alleges liability

---

17. *See, e.g., In re Wood*, 825 F.2d at 93–94 (holding that "related to" jurisdiction over third-

resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.

(footnotes omitted).

### McLellan's Fraudulent Misrepresentation Claims, Prior Breaches Claim, and Rescission Claims

If McLellan were successful on his fraudulent misrepresentation claims, or breaches claim, or rescission claims, then it appears same would have a conceivable effect on Plaintiff's bankruptcy estate because such claims might lessen or increase the estate's burdens under the Settlement Agreement. Therefore, McLellan's claims against L & S and Chinery are found to be related claims. *See, Matter of Wood,* 825 F.2d at 94. Under Paragraph 1 of the Settlement Agreement, the obligation of McLellan and Plaintiff to pay the $1,500,000 was a joint obligation.

Per Bankr.R. 9033, the Court enters the following proposed findings of fact and conclusions of law on McLellan's foregoing claims against L & S and Chinery. There was insufficient credible proof that McLellan was induced to enter the Settlement Agreement by any fraudulent misrepresentations of Chinery or L & S to McLellan or Plaintiff.

The Court takes notice from the record that, after the Settlement Agreement, Cybergenics went into bankruptcy. Prior to the trial herein, Plaintiff and Cybergenics settled any claims they had against each other, including any existing under the Settlement Agreement. There was insufficient credible proof that the parties to the Settlement Agreement could be effectively restored to the position they were in prior to the settlement, or that the remedy of rescission would be otherwise available to McLellan. See Paragraph 7 of the Settlement Agreement referencing the product described throughout the trial generically as the "Humble Warehouse product." While Cybergenics did not ship such specific products within three days, it did ship a replacement product within a reasonable period of time, which Plaintiff agreed was in substitution of Cybergenics' "Humble Warehouse product" obligation under such paragraph 7. This replacement product had a face value of approximately $430,000.

There was insufficient credible proof of prior breaches by other parties under the Settlement Agreement legally requiring that the Court declare the Settlement Agreement null and void or releasing McLellan from the Settlement Agreement. There was insufficient credible proof that L & S or Chinery waived their rights under the Settlement Agreement.

Plaintiff continued to sell product regardless of Federal Trade Commission letters or orders. Plaintiff copied the L & S Cybergenics' product and labels with its own similar type product and labels. McLellan paid himself a $709,125 bonus from Plaintiff on December 29, 1994. (DX 51). At such time, he knew Plaintiff owed L & S substantial moneys.

Judgment will be entered in accordance with the foregoing opinion.

### FINAL JUDGMENT

Pursuant to the Memorandum opinion signed this date, it is therefore **ORDERED:**

1. Carolyn's Kitchen do have an recover of and from L & S Research Corporation and Ken McLellan, jointly and severally $122,500, plus interest of $7,125, for a total of $129,625, plus interest thereon from this date at 5.67% per annum.

2. Subject to the requirements of 11 U.S.C. § 502(d), L & S Research Corporation has a claim in this bankruptcy of $3,323,141, a small portion of which is secured.

3. In the absence of Ken McLellan successfully prosecuting objections, under Bankruptcy Rule 9033(b), to the proposed findings of fact and conclusions of law in the Memorandum Opinion signed this date, then Ken McLellan takes nothing by reason of his claims against L & S Research Corporation and Scott Chinery.